1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

8
9
10
11

United States District Court
Northern District of California

12  | MEENA ARTHUR DATTA,                    Case No. 15-CV-00188-LHK
13  |          Plaintiff,                   **ORDER GRANTING MOTION FOR**
                                            **CLASS CERTIFICATION**
14  |     v.                                Re: Dkt. No. 43
15  | ASSET RECOVERY SOLUTIONS, LLC,
16  |          Defendant.
17

18      Plaintiff Meena Arthur Datta ("Plaintiff") brings this action against Defendant Asset

19  Recovery Solutions, LLC ("Defendant").[1]  Before the Court is Plaintiff's motion for class

20  certification.  ECF No. 43-1 ("Mot.").  The Court finds this motion suitable for decision without

21  oral argument pursuant to Civil Local Rule 7-1(b) and thus vacates the motion hearing set for

22  April 7, 2016, at 1:30 p.m.  Having considered the parties' submissions, the relevant law, and the

23  record in this case, the Court GRANTS Plaintiff's motion for class certification.

24  **I.      BACKGROUND**

25

26  _____

27  [1] Plaintiff filed her initial complaint against Defendants Asset Recovery Solutions, LLC and
    Oliphant Financial, LLC.  ECF No. 1.  Defendant Oliphant Financial, LLC was dismissed from
    this action pursuant to a stipulation of dismissal on March 9, 2015.  ECF No. 22.

28                                          1
    Case No. 15-CV-00188-LHK
    ORDER GRANTING MOTION FOR CLASS CERTIFICATION

### A. Factual Background

This putative class action arises out of Defendant's attempt to collect upon consumer debts from Plaintiff and others similarly situated.  Plaintiff alleges that, at some previous point in time, she incurred a consumer debt issued by HSBC Bank Nevada, N.A., for personal, family, or household purposes.  ECF No. 21 ¶ 8.  This debt was later consigned, placed, or otherwise assigned to Defendant for collection.  *Id.* ¶ 9.

Plaintiff alleges that Defendant sent her a collection letter on January 14, 2014.  *Id.* ¶¶ 10, 12; ECF No. 21-1.  This collection letter was sent in a glassine window envelope.  ECF No. 21 ¶ 14; ECF No. 21-2.  Plaintiff alleges that the collection letter and the glassine window envelope were designed so as to disclose (1) Plaintiff's name and address, (2) Defendant's identifying number for Plaintiff's account (i.e. "ARSL/1/6474509"), and (3) a barcode containing the same information to anyone who handled or processed the envelope while in transit to Plaintiff.  ECF No. 21 ¶¶ 16–17.  Furthermore, the glassine window envelope listed Defendant's business name, "Asset Recovery Solutions, LLC," in the return address.  *Id.* ¶ 18; ECF No. 21-2.  Plaintiff alleges that the business name "Asset Recovery Solutions, LLC" indicates that the letter was sent by a company engaged in the business of debt collection.  ECF No. 21 ¶ 19.  Finally, Plaintiff avers that Defendant routinely sends collection letters in this manner.  *Id.* ¶¶ 20–22.

### B. Procedural History

Plaintiff filed her initial complaint on January 13, 2015.  ECF No. 1.  On March 4, 2015, Plaintiff filed a First Amended Complaint ("FAC").  ECF No. 21.  The FAC asserts two causes of action, based on violations of (1) the Fair Debt Collection Practices Act ("FDCPA"), and (2) the Rosenthal Fair Debt Collection Practices Act ("RFDCPA").  Defendant answered the FAC on March 18, 2015. ECF No. 23.  On October 15, 2015, Plaintiff filed the instant motion for class certification, which seeks certification of the following class:

> (i) all persons with addresses in California, (ii) to whom Defendant sent, or caused to be sent, a collection letter in the form of Exhibit "1" in an envelope in the form of Exhibit "2," (iii) in an attempt to collect an alleged debt originally owed to HSBC Bank Nevada, N.A., (iv) which was incurred primarily for personal, family, or household purposes, (v) which were not returned as undeliverable by the U.S.

Case No. 15-CV-00188-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1

Post Office, (vi) during the period one year prior to the date of filing this action through the date of class certification.

2

Mot. at 1. Plaintiff seeks certification of this class pursuant to Federal Rule of Civil Procedure

3

23(b)(3). Defendant filed an opposition to Plaintiff's motion on December 17, 2015, ECF No. 52

4

("Opp'n"), and Plaintiff filed a reply on January 15, 2016, ECF No. 55 ("Reply").

5

## II.     LEGAL STANDARD

6

Federal Rule of Civil Procedure 23, which governs class certification, has two sets of

7

requirements that a plaintiff must meet before the Court may certify a class: a plaintiff must meet

8

all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b).

9

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous

10

that joinder of all members is impracticable; (2) there are questions of law or fact common to the

11

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

12

of the class; and (4) the representative parties will fairly and adequately protect the interests of the

13

class." Fed. R. Civ. P. 23(a). Courts refer to these requirements as "numerosity, commonality,

14

typicality and adequacy," respectively. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th

15

Cir. 2012).

16

In addition to meeting these Rule 23(a) requirements, a plaintiff must also satisfy one of

17

the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

18

With respect to Rule 23(b)(3), the Court may certify such a class if the Court finds that "questions

19

of law or fact common to class members predominate over any questions affecting only individual

20

members, and that a class action is superior to other available methods for fairly and efficiently

21

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Further, parties seeking to certify a Rule

22

23(b)(3) class must also demonstrate that the class is sufficiently ascertainable. *See Marcus v.*

23

*BMW of N. Am., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012); *Herrera v. LCS Fin. Servs. Corp.*,

24

274 F.R.D. 666, 671–72 (N.D. Cal. 2011).

25

"[A] court's class-certification analysis must be rigorous and may entail some overlap with

26

the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,

27

133 S. Ct. 1184, 1194 (2013). Nevertheless, "Rule 23 grants courts no license to engage in free-

28

3

United States District Court
Northern District of California

United States District Court
Northern District of California

1  ranging merits inquiries at the certification stage.  Merits questions may be considered to the

2  extent—but only to the extent—that they are relevant to determining whether the Rule 23

3  prerequisites . . . are satisfied."  *Id*. at 1194–95.

4  **III.    DISCUSSION**

5      **A.   Rule 23(a)**

6         In the instant case, Defendant does not contest that Plaintiff has satisfied Rule 23(a)'s

7  requirements for numerosity, commonality, and typicality.  Nonetheless, the Court briefly

8  addresses these requirements before addressing the adequacy requirement—which Defendant does

9  contest—at greater length.

10       **1.   Numerosity**

11         Under Rule 23(a)(1), class certification is appropriate if "the class is so numerous that

12  joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, Plaintiff has identified at

13  least 10,000 recipients of the allegedly illegal collection letters described in the class definition,

14  based upon an examination of Defendant's business records.  Mot. at 4.  As other district courts

15  have noted, "the numerosity requirement is usually satisfied where the class comprises 40 or more

16  members."  *See Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, 2013 WL 3802807, *2 (N.D.

17  Cal. July 17, 2013) (citing cases).  Defendant does not dispute that the putative class is sufficiently

18  numerous.  Under these facts, the Court finds that Plaintiff has established numerosity for

19  purposes of Rule 23(a)(1).

20       **2.   Commonality**

21         Next, Rule 23(a)(2) states that "[o]ne or more members of a class may sue or be sued as

22  representative parties on behalf of all members only if . . . there are questions of law or fact

23  common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement has "been construed

24  permissively"—all questions of fact and law need not be common to satisfy the rule.  *Ellis v.*

25  *Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011); *see also Mazza*, 666 F.3d at 589

26  ("[C]ommonality only requires a single significant question of law or fact.").

27         With respect to commonality, the Court finds instructive its recent decision in *Jacobson v.*

28

Case No. 15-CV-00188-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

*Persolve, LLC*, 2015 WL 3523696 (N.D. Cal. June 4, 2015). In *Jacobson,* plaintiff brought suit against defendants under the FDCPA and RFDCPA because defendants had sent plaintiff a debt collection letter which did not disclose the name of the creditor to whom plaintiff's debt was owed. *Id.* at *4. As in this case, plaintiff in *Jacobson* sought certification of a Rule 23(b)(3) class, comprised of all individuals in California who had received a similar letter. This Court granted plaintiff's motion to certify a Rule 23(b)(3) class, and stated that plaintiff had satisfied the commonality requirement because plaintiff had "identified a 'common contention' . . . capable of classwide resolution." *Id*. (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

Similar to *Jacobson*, in *Gold v. Midland Credit Management*, *Inc*., 306 F.R.D. 623, 627 (N.D. Cal. 2014), defendants sent plaintiff and all proposed class members a standardized letter which contained allegedly misleading passages. In adjudicating plaintiff's motion for class certification, the *Gold* court held that plaintiff had sufficiently established commonality because, based on the facts presented, defendants' liability under the FDCPA was an issue of law that would "generate a dispositive common answer" for all class members. *Id.* at 631.

The circumstances are analogous to the circumstances in *Jacobson* and in *Gold*. Plaintiff alleges that Defendant sent all putative class members the same collection letter in identical glassine window envelopes. In addition, according to Plaintiff, this collection letter violates the FDCPA and RFDCPA because the letter displayed Defendant's business name and disclosed information which could have been used to identify Plaintiff to anyone who handled the letter while in transit. Plaintiff has thus presented the Court with a common question of law—whether or not such letters violate the FDCPA and RFDCPA—based on a common course of conduct. Accordingly, consistent with *Jacobson* and *Gold,* the Court finds that Plaintiff has satisfied Rule 23(a)(2)'s commonality requirement.

### 3. Typicality

Under Rule 23(a)(3), the representative party must have claims or defenses that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member

Case No. 15-CV-00188-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009) (citations omitted).  This requirement is "permissive" and requires only that the representative's claims be "reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, the parties do not dispute that each proposed class member received the same collection letter and therefore suffered the same alleged injury under the FDCPA and RFDCPA. Each class member's claims thus "arise[] from the same course of events, and each class member makes similar legal arguments to prove . . . [D]efendant's liability." *Rodriguez*, 591 F.3d at 1124. In addition, Defendant does not contest that Plaintiff has sufficiently established typicality.  Under these circumstances, the Court concludes that Plaintiff has satisfied Rule 23(a)(3)'s typicality requirement.

### 4. Adequacy

Finally, Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement turns upon resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  The Court addresses these inquiries in turn.

#### a. Conflict of Interest

With respect to the conflict of interest inquiry, the U.S. Supreme Court has held that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (internal quotation marks and alteration omitted).

In the instant case, Defendant argues that Plaintiff is not an adequate class representative because Plaintiff has provided no proof as to "how the letter was mailed and whether any improper

Case No. 15-CV-00188-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

information was visible either through a glassine window on the envelope or on the envelope itself." Opp'n at 4 (emphasis removed). In addition, Defendant avers that Plaintiff is visually impaired. Consequently, Plaintiff cannot identify the contents of the collection letter and glassine window envelope. Defendant argues that, considered together, Plaintiff's lack of proof and Plaintiff's visual impairment demonstrate that Plaintiff is not an adequate class representative.

These arguments lack merit. First, contrary to Defendant's contentions, Plaintiff has in fact produced two key forms of proof as to Defendant's alleged misconduct. Attached to the FAC are copies of Defendant's debt collection letter and the glassine window envelope in which this letter was sent. *See* ECF Nos. 21-1, 21-2. Furthermore, Defendant has admitted to sending substantially similar letters in identical envelopes to at least 10,000 individuals.

This evidence distinguishes the instant case from *Everage v. National Recovery Agency*, 2015 WL 1071757 (E.D. Pa. Mar. 11, 2015). In *Everage*, which involved a nearly identical FDCPA claim, plaintiff produced only a copy of the debt collection letter; the *Everage* plaintiff acknowledged that he could not produce a copy of the envelope in which this letter was sent. *Id.* at *11. On the other hand, in the instant case, Plaintiff has produced a copy of the debt collection letter and the envelope in which the letter was sent. Defendant has, moreover, conceded that Defendant sent substantially similar letters in identical envelopes to thousands of other individuals.

Second, Plaintiff's alleged visual impairment is not relevant. The basis of Plaintiffs' claims is that Plaintiff's identifying information was made available to any individual who might have handled Defendant's debt collection letter while this letter was in transit. Thus, whether or not Plaintiff is visually impaired is immaterial—what matters is whether the third parties who handled Defendant's debt collection letter saw Plaintiff's identifying information and, if so, whether such circumstances give rise to a colorable FDCPA and RFDCPA claim.

Third, Defendant's arguments appear to conflate Rule 23(a)(4)'s adequacy requirement with Rule 23(b)(3)'s predominance requirement. Defendant, for instance, relies primarily upon the U.S. Supreme Court's decision in *Amgen*. *See* Opp'n at 4. However, the *Amgen* Court did not

7

United States District Court
Northern District of California

1  discuss or examine the adequacy requirement.  Instead, the *Amgen* Court focused solely on the

2  predominance requirement, and reiterated the U.S. Supreme Court's longstanding view that

3  extensive individualized inquiries can defeat a finding of predominance.  *Amgen*, 133 S. Ct. at

4  1194 ("The *only* issue before us in this case is whether [Defendant] has satisfied Rule 23(b)(3)'s

5  requirement that questions of law or fact common to class members predominate over any

6  questions affecting only individual members.") (internal quotation marks omitted) (emphasis

7  added).  As discussed in greater detail below, the instant case does not require the Court to engage

8  in any individualized inquiries.  Plaintiff and the putative class possess the same interest and have

9  suffered the same alleged injury, all based upon the same conduct undertaken by Defendant.

10  Plaintiff has thus sufficiently demonstrated predominance for purposes of class certification.  In

11  any event, pursuant to *Amgen*, this discussion is properly addressed in the context of Rule

12  23(b)(3)'s predominance requirement, and not in the context of Rule 23(a)(4)'s adequacy

13  requirement.

14        In sum, the Court is unpersuaded by Defendant's arguments.  Instead, the Court finds that

15  Plaintiff is a "part of the class" and "possess[es] the same interest and suffer[s] the same injury as

16  [other] class members."  *Amchem*, 521 U.S. at 625–26.  Accordingly, Plaintiff has satisfied the

17  adequacy inquiry's conflict of interest prong.

18        **b.  Vigorous Prosecution**

19        The second prong of the adequacy inquiry requires the Court to determine whether "the

20  named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class."

21  *Hanlon*, 150 F.3d at 1020.  "Although there are no fixed standards by which 'vigor' can be

22  assayed, considerations include competency of counsel and, in the context of a settlement-only

23  class, an assessment of the rationale for not pursuing further litigation."  *Id.* at 1021.  In the instant

24  case, the parties do not dispute that Plaintiff and Plaintiff's counsel will prosecute this action

25  vigorously.  In addition, Plaintiff's counsel has submitted several declarations which describe

26  counsel's experience in prosecuting consumer protection and FDCPA/RFDCPA class actions.  *See*

27  ECF Nos. 43-3, 43-6, 43-7.  Accordingly, the Court finds that Plaintiff has satisfied the vigorous

28

8

prosecution requirement.

To conclude, the Court finds Plaintiff to be an adequate class representative. Plaintiff and the proposed class share the same claims and interest in obtaining relief, and Plaintiff is assisted by experienced counsel in prosecuting this action.

**B. Rule 23(b)(3)**

**1. Predominance**

In addition to the Rule 23(a) requirements, Plaintiff here seeks certification of a damages class under Rule 23(b)(3). Under Rule 23(b)(3), the district court must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "While similar to Rule 23(a)'s requirements for typicality and commonality, 'the predominance criterion is far more demanding.'" *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 814 (7th Cir. 2012) (quoting *Amchem*, 521 U.S. at 623). The predominance inquiry "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008).

As discussed above, this Court recently addressed class certification in a nearly identical context in *Jacobson.* As in *Jacobson,* the common question of fact in the instant case is whether Defendant sent every putative class member substantively identical collection letters, and the common question of law is whether these letters violate the FDCPA and RFDCPA. *See Jacobson*, 2015 WL 3523696, *6. In other words, because the collection letters sent to the class are substantively identical to one another and the legal issues are the same for each class member, the instant case requires the Court to answer a single question: does Defendant's standardized practice of sending collection letters in glassine window envelopes that disclose (1) information that identifies the recipient and (2) Defendant's business name violate the FDCPA and/or RFDCPA? As this Court determined in *Jacobson,* "resolution of whether Defendant's practice . . . violates the FDCPA and/or RFDCPA will resolve the claims of the entire class." *Id.* Thus, consistent with

9

United States District Court
Northern District of California

1    *Jacobson*, the Court concludes that "common questions present a significant aspect of the case and

2    they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at

3    1022; *see also Abels v. JBC Legal Grp. P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005) (finding

4    predominance requirement satisfied where the defendants sent identical collection letters to each

5    class member).

6         Defendant's arguments to the contrary are unavailing.  In challenging predominance,

7    Defendant contends that individual inquiries will overwhelm common class questions because

8    class members must present "individual and fact intensive" evidence in order to establish

9    Defendant's alleged liability.  Opp'n at 8.  In making this argument, Defendant relies upon four

10   cases: *Soto v. Commercial Recovery Sys., Inc.*, 2011 WL 6024514 (N.D. Cal. Dec. 5, 2011)*;*

11   *Robinson v. Mun. Servs. Bureau*, 2015 WL 7568644 (E.D.N.Y. Nov. 24, 2015); *Gelinas v.*

12   *Retrieval-Masters Creditors Bureau, Inc.*, 2015 WL 4639949 (W.D.N.Y. July 22, 2015); and

13   *Gardner v. Credit Mgmt. LP*, 2015 WL 6442246 (S.D.N.Y. Oct. 23, 2015).  The Court finds these

14   cases inapposite.

15        In *Soto,* plaintiff sought to certify a FDCPA class consisting of "all California residents

16   who . . . took out one or more loans subject to California Code of Civil Procedure § 580b."  2011

17   WL 6024514, *2.  As a matter of California law, § 580b applies only to loans secured by primary

18   owner-occupied residences.  *Id.* at *7.  In order to establish class membership, plaintiff in *Soto*

19   intended to rely upon class members' uniform residential loan applications.  *Id.*  However, during

20   discovery, defendant in *Soto* established that a significant number of putative class members had

21   misstated the purpose of their loan on their uniform residential loan applications: the loan was

22   really for a second home, and not for a primary residence.  *Id.*  Under such circumstances, the

23   district court found class certification inappropriate, as the uniform residential loan applications

24   were demonstrably unreliable and "expose[d] a need for" the district court to undertake numerous

25   "individualized inquir[ies]."  *Id.*

26        These circumstances do not apply to the instant case.  Here, Defendant has offered no

27   evidence that the collection letters and glassine window envelopes are demonstrably unreliable to

10

United States District Court
Northern District of California

1    establish class membership.  Moreover, under Plaintiff's theory of the case, any individual who

2    received such a collection letter may bring an FDCPA and RFDCPA claim against Defendant.

3    Thus, beyond identifying those individuals who received from Defendant the same standardized

4    collection letters in the same glassine window envelope—which Plaintiff has already done—there

5    is no need for an individualized inquiry.

6           Defendant's reliance on *Robinson*, *Gelinas*, and *Gardner* is likewise unavailing.  Plaintiffs

7    did not file motions for class certification in any of these cases.  Instead, in each of these cases, the

8    district court examined plaintiffs' FDCPA claim on the merits, either in the context of a motion

9    brought under Federal Rule of Civil Procedure 12(b)(6) or under Federal Rule of Civil Procedure

10   12(c).  *See* Fed. R. Civ. P. 12(b)(6) (motion to dismiss for failure to state a claim); Fed. R. Civ. P.

11   12(c) (motion for judgment on the pleadings).

12          However, whether or not Plaintiff can prevail on the merits is a different question from

13   whether class treatment of Plaintiff's claims is appropriate.  Indeed, as the U.S. Supreme Court has

14   emphasized, "[m]erits questions may be considered to the extent—but only to the extent—that

15   they are relevant to determining whether the Rule 23 prerequisites for class certification are

16   satisfied." *Amgen*, 133 S. Ct. at 1195.  In accordance with *Amgen*, numerous courts have held that

17   merits questions and class certification questions are separate inquiries.  *See Edwards v. First Am.*

18   *Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) ("A court, when asked to certify a class, is merely to

19   decide a suitable method of adjudicating the case and should not turn class certification into a

20   mini-trial on the merits.") (internal quotation marks omitted); *Schlaud v. Snyder*, 785 F.3d 1119,

21   1125 (6th Cir. 2015) ("Whether a class should be certified and whether the claims raised by that

22   class have any merit are two different questions."); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D.

23   492, 507 (N.D. Cal. 2012) ("A district court must resolve factual disputes necessary to class

24   certification, but the court should not turn the class certification proceedings into a dress rehearsal

25   for the trial on the merits.") (internal quotation marks and alterations omitted).

26          In the instant case, Defendant has not moved to dismiss Plaintiff's claims on the merits,

27   and the Court need not examine the merits of Plaintiff's claims for purposes of deciding Plaintiff's

28                                                        11

United States District Court
Northern District of California

motion for class certification.  Instead, the Court must only determine whether Plaintiff has established that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Here, because the claims at issue arise from a common course of conduct and present a common legal question, the Court finds that Plaintiff has satisfied Rule 23(b)(3)'s predominance requirement.

### 2.  Superiority

Rule 23(b)(3) provides four factors that a court must consider in determining whether a class action is superior to other methods of adjudication.  These factors are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The Court addresses these factors in turn.

### a.  Individual Interest in Controlling Litigation

With respect to the interest of each class member in controlling the prosecution or defense of separate actions, Defendant argues that a class action is not a superior means for adjudicating the claims at issue because "any possible recovery by class members would be de minimis."  Opp'n at 5.  In an FDCPA class action, the maximum recovery is "the lesser of $500,000 or 1 per centum of the net worth of the debt collector."  15 U.S.C. § 1692k(a)(2)(b).  Based on Defendant's net worth, Defendant argues that the 10,000 proposed class members would receive a mere $1.50.  Opp'n at 6.  In comparison, individuals suing under the FDCPA can recover actual damages and up to $1,000 in statutory damages.  15 U.S.C. § 1692k(a)(1)-(2)(A).  Similar remedies are available under the RFDCPA.  Cal. Civ. Code § 1788.30.  Based on these provisions, Defendant contends that the claims at issue are better resolved in individual actions, where recovery would be higher on an individual basis.  Opp'n at 7.

The Court finds this argument unpersuasive for four reasons.  First, the Court observes

12

that, as a general matter, courts routinely certify class actions where monetary recovery would be small.  In *Amchem*, the U.S. Supreme Court stated that "[w]hile the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."  521 U.S. at 617 (internal quotation marks omitted omitted).  Circuit and district courts have applied this principle in a variety of contexts.  In *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001), for instance, the Ninth Circuit observed that "[w]here damages suffered by each putative class member are not large," the "interest of each member in 'individually controlling the prosecution or defense of separate actions' . . . weighs in favor of certifying a class action."  (internal quotation marks omitted); *see also Palana v. Mission Bay Inc.*, 2015 WL 4110432, *8 (N.D. Cal. July 7, 2015) (citing *Zinser* and stating that "[c]lass treatment would increase the class members' access to redress by unifying what otherwise may be multiple small claims.").  Likewise, in approving a class action settlement in *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 534 (3d Cir. 2004), the Third Circuit stated that, where "each consumer has a very small claim in relation to the cost of prosecuting a lawsuit," a class action "facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes."

Second, the efficacy of a single class action lawsuit to resolve the FDCPA and RFDCPA issues that Plaintiff has raised outweighs the possibility of a small class recovery.  In this case, Defendant's liability will turn on the legality of the allegedly defective standardized collection letter sent to approximately 10,000 class members.  Rather than litigate 10,000 individual cases that raise the same questions of law and fact, class litigation would efficiently and consistently adjudicate the issue of Defendants' liability under the FDCPA and the RFDCPA in a single action.  Moreover, the FDCPA appears to specifically contemplate class actions for these sorts of situations.  As then U.S. District Judge Martin Jenkins observed, individual claimants are "most likely unaware of their rights under the FDCPA," and "the size of any individual damages claims under the FDCPA are usually so small that there is little incentive to sue individually."  *Hunt v.*

13

United States District Court
Northern District of California

1   *Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514–15 (N.D. Cal. 2007); *see also Gold*, 2014 WL

2   5026270, *9 ("[I]ndividual recovery [under the FDCPA] is small, and resorting to alternative

3   mechanisms would be unduly inefficient."); *Jacobson*, 2015 WL 3523696, *7. The Court agrees

4   with this reasoning, and finds that many class members here are likely unaware of their rights and

5   unlikely to sue individually. Thus, in the interest of efficiency and fairness, a class action is

6   superior to the alternative methods of adjudication available in this case.

7         Third, the mandatory notice and opt-out provisions under Rule 23(c)(2) can help protect

8   the interests of the proposed class members should they wish to pursue individual claims. *See*

9   Fed. R. Civ. P. 23(c)(2); *Jacobson*, 2015 WL 3523696, *9. Pursuant to Rule 23(c)(2)(B), each

10  class member will be sent a notice that informs them of the claims at issue and the right to be

11  excluded from the class. At that point, any prospective class member who is dissatisfied with the

12  potential recovery may choose to opt out of the class and bring an individual lawsuit against

13  Defendant under the FDCPA and RFDCPA.

14        Fourth, although the Ninth Circuit has not yet addressed de minimis recoveries in the

15  FDCPA context, every district court within the Ninth Circuit has, when presented with this

16  question, held that "the likelihood of a de minimis class recovery under the FDCPA is not a bar to

17  class certification." *Jacobson*, 2015 WL 3523696, *8. Indeed, as noted in *Jacobson*, district

18  courts in this circuit have certified FDCPA class actions where the estimated recovery per class

19  member ranged from $0.00000111 to $11.28. *See, e.g.*, *del Campo v. Am. Corrective Counseling*

20  *Servs., Inc.*, 254 F.R.D. 585, 596 n.9 (N.D. Cal. 2008) ($0.00000111 per class member); *Abels*,

21  227 F.R.D. at 547 ($0.25 per class member); *Bogner v. Masari Invs., LLC*, 2010 WL 2595273, *2

22  (D. Ariz. June 24, 2010) ($11.28 per class member). Here, the estimated potential recovery—

23  approximately $1.50—falls squarely within the range set forth in *del Campo*, *Abels*, and *Bogner*.

24        In addition to these district court decisions, in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338,

25  344 (7th Cir. 1997), the Seventh Circuit concluded that a recovery of only $0.28 per class member

26  would not bar class certification in the FDCPA context. As the Seventh Circuit explained,

27

28
                                          14

United States District Court
Northern District of California

> [W]e believe that a de minimis recovery (in monetary terms) should not automatically bar a class action.  The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.
>
> True, the FDCPA allows for individual recoveries of up to $1000.  But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case.  These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

*Id.*  Numerous federal courts have followed *Mace* to hold that the possibility of a de minimis recovery does not automatically bar a class action.  *See, e.g.*, *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 464 (S.D.N.Y. 2007) (certifying FDCPA class based on potential recovery of $2.50 per class member); *Warcholek v. Med. Collections Sys., Inc.*, 241 F.R.D. 291, 295–96 (N.D. Ill. 2006) (certifying FDCPA class where defendant claimed negative net worth); *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 508 (D. Kan. 2015) (certifying FDCPA class based on potential recovery of $2.63 per class member).

In opposition, Defendant cites two cases where district courts have decertified an FDCPA class after finding the potential class recovery to be too low—*Fairbrun v. Sw. Credit Sys., L.P.*, 2008 WL 750550 (E.D.N.Y. Mar. 18, 2008), and *Granisher v. Check Enf't Unit*, 209 F.R.D. 392 (W.D. Mich. 2002).  Opp'n at 5 n.1.  These cases are distinguishable for two reasons.  First, Defendant has not filed a motion to decertify.  Thus, these decertification cases are of little assistance in adjudicating the instant motion for class certification.  Second, and more importantly, the potential recovery in these decertification cases—less than one cent in *Fairbrun* and approximately six cents in *Granisher*—is far less than the estimated potential recovery in the instant case.  Here, on the other hand, each class member would receive at least $1.50, with the potential of a higher recovery if potential class members opt out.

Defendant also cites several cases where district courts outside the Ninth Circuit have denied class certification under the FDCPA because of the possibility of a de minimis recovery to class members.  The Court finds these cases inapposite.  Opp'n at 7.  In *Lewis v. Riddle*, 1998 U.S.

Case No. 15-CV-00188-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

Dist. LEXIS 20465 (W.D. La. Nov. 18, 1998), for instance, the district court denied class certification because plaintiff had failed to demonstrate predominance.  Accordingly, "the trial of the proposed class action [would] require the resolution of fact issues for each individual member."  *Id.* at *26.  In contrast, in the instant case, Plaintiff has sufficiently established predominance under Rule 23(b)(3).  Thus, the trial of the proposed class action here would *not* "require the resolution of fact issues for each individual [class] member."  *Id.*

The remaining cases upon which Defendant relies—*Sonmore v. CheckRite Recovery Services., Inc.*, 206 F.R.D. 257 (D. Minn. 2001), *Jones v. CBE Group*, 215 F.R.D. 558, 570 (D. Minn. 2003), and *Lyles v. Rosenfeld Attorney Network*, 2000 WL 798824 (N.D. Miss. May 17, 2000)—are likewise unavailing.  In *Sonmore*, the district court concluded that an estimated recovery between $0.15 and $25 per class member was insufficient.  206 F.R.D. at 265.  Similarly, in *Jones*, the district court, citing *Sonmore*, denied class certification because "the potential recovery for unnamed class members [was], at most, de minimis."  215 F.R.D. at 570.  Finally, in *Lyles*, the maximum recovery would have been $18.68 per class member.  The *Lyles* court found that a class action was not a superior adjudication method because "[b]y certifying the class, the court would [significantly reduce] each class members' potential [individual] recovery."  2000 WL 798824, *6.

However, in *Sonmore*, *Jones*, and *Lyles*, the district courts did not consider the hurdles that an individual plaintiff might face in the absence of a class action.  Specifically, the *Sonmore*, *Jones*, and *Lyles* courts did not consider an individual plaintiff's lack of knowledge regarding the FDCPA and the difficulty that an individual plaintiff might have in finding counsel in light of the small recovery.  Rather, the district courts in these cases assumed that there was "no lack of incentive for either plaintiffs or counsel to pursue individual FDCPA actions."  *Jone*s, 215 F.R.D. at 570.

The Court is not convinced that denying class certification here would result in 10,000 plaintiffs bringing individual claims.  On this particular point, the Court notes that *Sonmore*, *Jones*, and *Lyles* were decided in 2001, 2003, and 2000, respectively.  In the time since, nearly

16

every federal court—including this Court—has allowed parties to bring FDCPA class actions precisely because individual claims are unlikely to be brought.  Aggregating claims thus encourages lawsuits that produce the "deterrent and curative effect of eliminating abusive collection practices intended by Congress."  *Jacobson*, 2015 WL 3523696, *8.  Moreover, as the Seventh Circuit stated in *Mace*, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." 109 F.3d at 344.  "A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."  *Id.*

Indeed, in *Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 378 (D. Minn. 2013), a district court in the District of Minnesota—the same district court as *Sonmore* and *Jones*—recently found that superiority was met where the class recovery was estimated to be between $0.13 and $22.73 per class member.  The *Hartley* court expressly declined to follow *Sonmore* and *Jones*, and instead found more persuasive recent case law where courts have reasoned that "the potential maximum recovery is not the only, or most relevant, consideration when determining whether an FDCPA class action may be certified."  *Id.*  Although the putative class members in *Hartley* could have "potentially obtain[ed] a greater amount of damages in an individual suit," the district court found that these plaintiffs were unlikely to know their rights and therefore "unlikely to bring their own claims for FDCPA violations." *Id.* at 379.  In the instant case, the Court finds that, as in *Hartley*, *Jacobson*, *Mace*, and the numerous other cases cited above, class members are unlikely to bring individual claims against Defendant for Defendant's alleged FDCPA and RFDCPA violations.

In sum, for the reasons stated above, the Court finds that a class action in this case is well suited to address "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."  *Amchem*, 521 U.S. at 617.  Accordingly, Plaintiff has sufficiently established superiority for purposes of Rule 23(b)(3).

**b.  Remaining Superiority Factors**

17

United States District Court
Northern District of California

1    Although the parties do not address the remaining superiority factors, the Court addresses

2    these factors briefly below.

3    The second factor, "the extent and nature of any [other] litigation concerning the

4    controversy," weighs in favor of certification.  To the Court's knowledge, this case is the only

5    action that has been brought against Defendant concerning Defendant's practice of sending

6    collection letters in glassine window envelopes that disclose (1) Plaintiff's name and address, (2)

7    Defendant's identifying number for Plaintiff's account, and (3) a barcode containing the same

8    information.  *See, e.g.*, Wright & Miller, 7AA Federal Practice and Procedure § 1780 (describing

9    Rule 23(b)(3)(B) as "intended to serve the purpose of assuring judicial economy and reducing the

10   possibility of multiple lawsuits.").

11   The third factor, the desirability of concentrating the litigation in a particular forum, also

12   counsels in favor of certification.  Plaintiff's proposed class is limited to "persons with addresses

13   in California."  Mot. at 1.  Defendant's actions affected California residents and, to the Court's

14   knowledge, there is no indication that this particular forum is any less desirable than any other

15   forum within California.

16   Finally, the fourth factor, which concerns the difficulty of managing a class action,

17   depends largely on whether Plaintiff's case "rises and falls [on] common evidence."  *In re High-*

18   *Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1228 (N.D. Cal. 2013).  This factor thus

19   overlaps with the Court's commonality, typicality, and predominance analysis.  Accordingly, the

20   Court finds that this fourth factor weighs in favor of class certification.

21   In sum, after weighing the four superiority factors, the Court concludes that Plaintiff has

22   satisfied Rule 23(b)(3)'s superiority requirement.

23   **3.  Ascertainability**

24   Courts addressing class certification motions under Rule 23(b)(3) have held that, "apart

25   from the explicit requirements of Rule 23(a) [and Rule 23(b)(3)], the party seeking class

26   certification must demonstrate that an identifiable and ascertainable class exists."  *Sethavanish v.*

27   *ZonePerfect Nutrition Co.*, 2014 WL 580696, *4 (N.D. Cal. Feb. 13, 2014).  A class is

28
Case No. 15-CV-00188-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

ascertainable if the class is defined with "objective criteria" and if it is "administratively feasible to determine whether a particular individual is a member of the class." *Id.*

The parties do not dispute that ascertaining class membership would be relatively straightforward. With respect to administrative feasibility, for example, the parties have, by examining Defendant's business records, identified at least 10,000 putative class members who received the same form letter during the class period. Accordingly, the Court finds the class sufficiently ascertainable.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for class certification. Plaintiff has satisfied the requirements of Rules 23(a) and 23(b)(3), and the Court CERTIFIES the following Rule 23(b)(3) class:

> (i) all persons with addresses in California, (ii) to whom Defendant sent, or caused to be sent, a collection letter in the form of Exhibit "1" in an envelope in the form of Exhibit "2," (iii) in an attempt to collect an alleged debt originally owed to HSBC Bank Nevada, N.A., (iv) which was incurred primarily for personal, family, or household purposes, (v) which were not returned as undeliverable by the U.S. Post Office, (vi) during the period one year prior to the date of filing this action through the date of class certification.

The Court APPOINTS Meena Arthur Datta as representative of the class. As Defendants do not challenge the adequacy of proposed class counsel, the Court also APPOINTS Fred Schwinn and Raeon Roulston of the Consumer Law Center and Randolph Bragg of Horwitz, Horwitz & Associates as class counsel to represent the class.

**IT IS SO ORDERED.**

Dated: March 18, 2016

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 15-CV-00188-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION