United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MEENA ARTHUR DATTA,

        Plaintiff,

   v.

ASSET RECOVERY SOLUTIONS, LLC,

        Defendant.

Case No. 15-CV-00188-LHK

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 79 & 80

    Plaintiff Meena Arthur Datta ("Plaintiff") brings this action against Defendant Asset Recovery Solutions, LLC ("Defendant").[1]  Before the Court are the parties' cross-motions for summary judgment.  ECF No. 79 ("Def. Mot."); ECF No. 80 ("Pls. Mot.").  Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

**I.      BACKGROUND**

---

[1] Plaintiff filed her initial complaint against Asset Recovery Solutions, LLC and Oliphant Financial, LLC.  Oliphant Financial, LLC was dismissed from this action pursuant to a stipulation of dismissal on March 9, 2015.  ECF No. 22.

1

Case No. 15-CV-00188-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**A. Factual Background**

This case arises out of Defendant's attempt to collect upon the consumer debts of Plaintiff and others similarly situated.  Plaintiff alleges that, at some prior point in time, she incurred a consumer debt issued by HSBC Bank Nevada, N.A., for personal, family, or household purposes.  ECF No. 21 ¶ 8.  This debt was later consigned, placed, or otherwise assigned to Defendant for collection.  *Id.* ¶ 9.

Plaintiff states that Defendant sent her a collection letter on January 14, 2014.  *Id.* ¶¶ 10, 12.  This collection letter was sent in a glassine window envelope.  *Id.* ¶ 14.  Plaintiff alleges that the collection letter and glassine window envelope were designed so as to disclose (1) Plaintiff's name and address, (2) Plaintiff's account number, and (3) a bar code containing the same information to anyone handling or processing the envelope while in transit to Plaintiff.  Defendant disputes these allegations, and states that the number and bar code do not identify Plaintiff.  Furthermore, the letter Plaintiff received lists Defendant's business name, "Asset Recovery Solutions, LLC," in the return address.  *Id.* ¶¶ 17–18.  Plaintiff states that this name indicates that the letter was sent by a company engaged in the business of debt collection.  *Id.* ¶ 19.  Finally, Plaintiff avers that Defendant routinely sends collection letters in this manner.  *Id.* ¶¶ 20–22.

**B. Procedural History**

Plaintiff filed her initial complaint on January 13, 2015.  ECF No. 1.  On March 4, 2015, Plaintiff filed the First Amended Complaint ("FAC").  ECF No. 21.  The FAC asserts two causes of action, based on violations of (1) the federal Fair Debt Collection Practices Act ("FDCPA"), and (2) California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA").  Defendant answered the FAC on March 18, 2015.  ECF No. 23.  On October 15, 2015, Plaintiff moved for class certification, seeking certification of the following class pursuant to Federal Rule of Civil Procedure 23(b)(3):

> (i) all persons with addresses in California, (ii) to whom Defendant sent, or caused to be sent, a collection letter in the form of Exhibit "1" in an envelope in the form of Exhibit "2," (iii) in an attempt to collect an alleged debt originally owed to HSBC Bank Nevada, N.A., (iv) which was incurred primarily for personal, family,

United States District Court
Northern District of California

or household purposes, (v) which were not returned as undeliverable by the U.S. Post Office, (vi) during the period one year prior to the date of filing this action through the date of class certification.

On March 18, 2016, the Court granted Plaintiff's motion for class certification. ECF No. 66. The parties subsequently filed a proposed Class Notice and Opt Out Form on April 14, 2016, and the Court suggested various amendments on April 18, 2016. The parties adopted the Court's changes in full on April 19, 2016. ECF No. 77. The amended Notice and Opt Out Form were then sent to the Class, with an Opt Out deadline of May 23, 2016. There have been 33 opt outs from a Class of 11,383 individuals. ECF No. 93 at 3.

On April 28, 2016, the parties filed their cross-motions for summary judgment. On May 12, 2016, Defendant filed a response to Plaintiff's motion for summary judgment, and on May 19, 2016, Plaintiff filed a reply. ECF No. 83 ("Def. Opp'n"); ECF No. 85 ("Pls. Reply"). Likewise, on May 12, 2016, Plaintiff filed a response to Defendant's motion for summary judgment, and on May 19, 2016, Defendant filed a reply. ECF No. 84 ("Pls. Opp'n"); ECF No. 87 ("Def. Reply"). On May 12, 2016, Plaintiff also filed an evidentiary objection to the declaration of Steve Fishbein. ECF No. 84-1.

## II.    LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249 (citations omitted).

3

1  The moving party bears the initial burden of identifying those portions of the pleadings,

2  discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*

3  *Corp.*, 477 U.S. at 323. When the party opposing summary judgment has the burden of proof at

4  trial, the party moving for summary judgment need only point out "that there is an absence of

5  evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial

6  burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56,

7  "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

8  **III.   DISCUSSION**

9  **A.   Evidentiary Objection**

10  In moving for summary judgment, Defendant included a declaration from Steve Fishbein

11  ("Fishbein"). In his declaration, Fishbein explained that he had served as Defendant's CEO for

12  the past six years, and had worked in the financial services industry for the past thirty years. ECF

13  No. 79-4 ("Fishbein Decl.") ¶¶ 5–7. Fishbein further stated that he was "familiar with the

14  operational procedures and drafting of form letters [that Defendant] uses in its line of business, as

15  well as the practices of [Defendant's] letter vendor." *Id.* ¶ 8. According to Fishbein, "[t]he series

16  of characters that appear above [Defendant's] customers' names and are visible through the

17  glassine window of its envelope" are not, as Plaintiff contends, Plaintiff's delinquent account

18  number. *Id.* ¶ 9. Instead, these characters "are unique identifiers assigned by [Defendant's] letter

19  vendor for purposes of tracking returned mail." *Id.* Thus, these "characters . . . only have

20  significance to" Defendant's letter vendor. *Id.* ¶ 10.

21  Fishbein also asserts that the bar code is another "means to track the letters internally by

22  [Defendant's letter] vendor." *Id.* ¶ 12. Again, "[t]he information used to track returned mail that

23  can be utilized by scanning the bar code only has relevance to [Defendant] and its letter vendor."

24  *Id.* ¶ 13. Finally, Fishbein concludes that "[i]t is not a business practice for [Defendant] to

25  disclose its customers' account information or personal identifying information to third parties."

26  *Id.* ¶ 15.

27

28  Case No. 15-CV-00188-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff has moved to strike Fishbein's statements that the reference number and bar code

2    on Plaintiff's envelope only have significance to Defendant and Defendant's letter vendor.  ECF

3    No. 84-1 at 2.  Plaintiff has also objected to Fishbein's statement that it is not Defendant's

4    business practice to disclose customer account information to third parties.  *Id.*  According to

5    Plaintiff, these statements run afoul of Federal Rules of Evidence 602 and 701, which govern lay

6    witness testimony.

7    Plaintiff's objections lack merit.  Federal Rule of Civil Procedure 56, the rule governing

8    summary judgment motions, provides that a court may consider a declaration so long as the

9    declaration is "made on personal knowledge, set[s] out facts that would be admissible in evidence,

10   and show[s] that the . . . declarant is competent to testify on the matters stated."  Fed. R. Civ. P.

11   56(c)(4).  Fishbein's statements satisfy these three requirements.  As CEO, Fishbein is familiar

12   with the relationships that exist between Defendant and its letter vendors.  That familiarity

13   sufficiently establishes the foundation necessary for personal knowledge.  In addition, Fishbein's

14   declaration sets out facts that would be relevant and admissible at trial.  Whether or not the

15   reference number and bar code on Plaintiff's envelope represent Plaintiff's delinquent account

16   number is the central dispute in this action.  Finally, Fishbein satisfies the necessary requirements

17   for competence.

18   As an additional point, although a party need not, at summary judgment, "necessarily have

19   to produce evidence in a form that would be admissible at trial," the evidence here would also be

20   admissible under both Federal Rule of Evidence 602 and 701.  *Fraser v. Goodale*, 342 F.3d 1032,

21   1036 (9th Cir. 2003).  Rule 602 states that a "witness may testify to a matter only if evidence is

22   introduced sufficient to support a finding that the witness has personal knowledge of the matter."

23   Fed. R. Evid. 602.  As noted above, Fishbein's role as CEO establishes the personal knowledge

24   necessary for him to testify on matters regarding the practices of his company and its letter vendor.

25   Similarly, Rule 701 states that lay opinion testimony should be "rationally based on the witness's

26   perception," "helpful to . . . determining a fact in issue," and "not based on scientific, technical, or

27

28   Case No. 15-CV-00188-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

specialized knowledge." Fed. R. Evid. 701.  In the instant case, Fishbein's declarations are based on his personal experiences as CEO, are helpful to understanding what the numbers and bar code on Plaintiff's envelope mean, and are not based on expert knowledge.  The statements thus sufficiently satisfy Rule 701.

Accordingly, Plaintiff's evidentiary objection is OVERRULED.

**B. Motions for Summary Judgment**

The parties' summary judgment motions address the same issues: (1) whether the reference number and bar code displayed on Plaintiff's envelope violate the FDCPA and RFDCPA, and (2) whether Defendant's decision to display its business name, "Asset Recovery Solutions, LLC," on Plaintiff's envelope violates the FDCPA and RFDCPA.  Moreover, in the instant case, Plaintiff acknowledges that Defendant's liability under the RFDCPA is derivative of Defendant's liability under the FDCPA.  Pls. Mot. at 16 (quoting RFDCPA, Cal. Civ. Code § 1788.17, which states that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [the FDCPA], inclusive, of, and shall be subject to the remedies in [the FDCPA].").  Thus, the Court examines the two issues in the cross-motions for summary judgment together, with the understanding that Defendant's liability under the RFDCPA depends entirely upon Defendant's liability under the FDCPA.

**1. Display of Reference Number and Bar Code**

**a. Legal Framework**

"In order to state a claim under the FDCPA, a plaintiff must show: 1) that he is a consumer; 2) that the debt arises out of a transaction entered into for personal purposes; 3) that the defendant is a debt collector; and 4) that the defendant violated one of the provisions of the FDCPA." *Freeman v. ABC Legal Servs. Inc.*, 827 F.Supp.2d 1065, 1071 (N.D. Cal. 2011).  Here, Defendant does not contest the first three elements: that Plaintiff is a consumer, that Plaintiff's debt arises from a transaction entered into for personal purposes, and that Defendant is a debt collector.  Def. Opp'n at 2–3 (asserting no arguments as to first three FDCPA elements).

Case No. 15-CV-00188-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

As to the fourth element, a communication from a debt collector violates the FDCPA if it is "likely to deceive or mislead a hypothetical 'least sophisticated debtor.'" *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996). Here, Plaintiff contends that Defendant violated 15 U.S.C. § 1692f(8), an FDCPA provision which proscribes the use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer."[2] According to Plaintiff, Plaintiff's collection letter displayed both a reference number and bar code which allegedly identify Plaintiff.

In applying 15 U.S.C. § 1692f(8), many courts have adopted a benign language exception. Benign language is language that does not relate to an individual's status as a debtor. Such language is not subject to FDCPA liability because punishing the use of benign language does nothing to promote the FDCPA's purpose of "protect[ing] consumers from improper conduct and illegitimate collection practices." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1169–70 (9th Cir. 2006) (internal quotation marks omitted); *see also Gonzales v. Arrow Fin. Serv., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) ("The FDCPA does not subject debt collectors to liability for bizarre, idiosyncratic, or peculiar misinterpretations.") (internal quotation marks omitted).

In interpreting the benign language exception, the Eighth Circuit has held that a debt collector's "logo and [various] innocuous phrases printed on [defendant's] envelopes" do not establish FDCPA liability. *Strand v. Diversified Collection Servs.*, 380 F.3d 316, 319 (8th Cir. 2004). As the Eighth Circuit observed, under a "literal reading of § 1692f(8), a debtor's address and an envelope's pre-printed postage would arguably be prohibited, as would any innocuous

---

[2] The full text of 15 U.S.C. § 1692f(8) reads:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

Case No. 15-CV-00188-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

mark related to the post, such as 'overnight mail' and 'forwarding and address correction requested.'" *Id.* at 318. "[S]trict adherence to the literal word," the Eighth Circuit noted, "less advances the purposes of the statute than a liberal reading consistent with modern custom and usage." *Id.* at 319.

Consistent with *Strand*, the Fifth Circuit has also adopted a benign language exception to 15 U.S.C. § 1692f(8). *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488 (5th Cir. 2004). This reading, the Fifth Circuit explained, was consistent with the legislative purpose behind 15 U.S.C. § 1692f(8). A U.S. Senate report, for instance, made "clear that § 1692f(8) was intended merely to prevent debt collectors from embarrassing debtors by announcing the delinquency on the outside of a debt collection letter envelope." *Id.* at 494. Further, with respect to 15 U.S.C. § 1692f(8), the FTC has held that "[a] debt collector does not violate this section by using an envelope with words or notations that do not suggest the purpose of the communication. For example, a collector may communicate via an actual telegram or similar service, that uses a Western Union (or other provider) logo and the word 'telegram' (or similar word) on the envelope, or a letter with the word 'Personal' or 'Confidential' on the envelope." *Id.* With these circumstances in mind, the Fifth Circuit determined "that the FDCPA [did] not bar the innocuous 'priority letter' markings" that were on the debt collection envelope in *Goswami*. *Id.*; *see also id.* ("Nothing about the marking 'priority letter' intimates that the contents of the envelope relate to collection of delinquent debts, and thus the language is neither threatening nor embarrassing.").

In accord with *Strand* and *Goswami*, numerous other courts have concluded that 15 U.S.C. § 1692f(8) includes a benign language exception. In *Lindbergh v. Transworld Systems, Inc.*, 846 F. Supp. 175, 176 (D. Conn. 1994), for instance, the district court rejected plaintiff's FDCPA claim because defendant had included "a bold blue strip across the front of the envelope, upon which was printed . . . the word 'TRANSMITTAL.'" As the *Lindbergh* court noted, "[t]he plaintiff has nowhere alleged that the symbol at issue here pertains to debt collection in any way." *Id.* at 180. "Nor has the plaintiff suggested, much less shown, how his mechanical interpretation

8

United States District Court
Northern District of California

of Section 1692f(8)—which finds no support in either the case law, the legislative history, or the governing administrative agency construction—comports with the structure or purpose of the FDCPA." *Id.*; *see also Gonzalez v. FMS, Inc.*, 2015 WL 4100292, *4 (N.D. Ill. July 6, 2015) ("Numerous district courts, both in this District and elsewhere, have recognized that Section 1692f(8) should not be construed mechanically.").

Notably, district courts in both the Central and Southern Districts of California have adopted the benign language exception.  In *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1466 (C.D. Cal. 1991), the district court rejected plaintiff's argument that "the language 'PERSONAL & CONFIDENTIAL'" and "the phrase 'Forwarding and Address Correction Requested,'" which were printed on a debt collection envelope, violated the FDCPA.  As the *Masuda* court noted, "Congress enacted § 1692f(8) simply to prevent debt collectors from using symbols on envelopes indicating that the contents *pertain to debt collection*." *Id.* (internal quotation marks omitted).  "Congress' interest in protecting consumers, however, would not be promoted by proscribing benign language." *Id.*  In like manner, in *Voris v. Resurgent Capital Servs, L.P.*, 494 F. Supp. 2d 1156, 1165–66 (S.D. Cal. 2007), the district court held that, "[g]iven that the trend of authority is to recognize the existence of a benign language exception to § 1692f(8)," "this court finds that the exception should apply."

Accordingly, in line with *Masuda* and *Voris*, and consistent with the other authority discussed above, the Court finds that the benign language exception applies here.

### b. Analysis

Having determined that 15 U.S.C. § 1692f(8) contains a benign language exception, the Court also finds that the reference number and bar code at issue both fall within the exception's reach.  According to Defendant, "the reference number Plaintiff complains of was not the account number provided by the original creditor, but is a number that [Defendant's] letter vendor assigned independent of the original creditor's account number, and the number is only relevant to the letter vendor for purposes of determining undeliverable mail." Def. Mot. at 1.  Below the reference

9

United States District Court
Northern District of California

number is a bar code that, Defendant also contends, "is simply a[nother] means to track the letters internally by [Defendant's letter] vendor." *Id.* at 2.  Neither this reference number nor bar code, Defendant contend, pertain to Plaintiff's debt.

Several pieces of evidence corroborate Defendant's arguments.  First, the Fishbein declaration states that "[t]he series of characters that appear above [Defendant's] customers' names . . . are unique identifiers assigned by [Defendant's] letter vendor for purposes of tracking returned mail."  Fishbein Decl. ¶ 9.  Defendant's "letter vendor also places a bar code above its customers' name which is visible through the glassine window of its envelopes which is a means to track the letters internally by its vendor."  *Id.* ¶ 12.  Nothing in Fishbein's declaration suggests that this reference number and bar code relate to or identify Plaintiff as a debtor.  Moreover, Plaintiff has not challenged Fishbein's statement that the reference number and bar code are used solely for internal tracking purposes by Defendant's letter vendor.

Second, the reference number in the instant case is ARSL/1/647509 694009370925 18361/000012983/45.  ECF No. 79-2 at 15.  It is visible through the glassine window envelope. Plaintiff's delinquent account number is 5156250129573855.  This delinquent account number is not on the envelope itself, is not visible through the glassine window, is in the body of Plaintiff's letter, and can only be viewed when the letter is removed from the envelope.  Moreover, during her deposition, Plaintiff acknowledged that the account number for her delinquent account ended in "3855."  ECF No. 79-5 at 11.  In other words, the reference number at issue (ARSL/1/647509 694009370925 18361/000012983/45) is not Plaintiff's delinquent account number (5156250129573855).

As further support for this point, Plaintiff did not, in her deposition, provide any evidence that the reference number at issue related to her debt.  She simply stated that, "I think it's a number that . . . [Defendant] created," and that, "[w]hen it's coming from a debt collector, it has to be an account number from some place" *Id.* at 9.  Plaintiff thus provided no factual basis for her belief that the reference number at issue had any relationship to her delinquent account number.

Case No. 15-CV-00188-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

In addition to the foregoing evidence, the legal authority also weighs in Defendant's favor. No court has found FDCPA liability based upon symbols or characters on an envelope that are associated with a letter vendor and that do not identify the letter recipient as a debtor.  In fact, the Southern District of New York addressed a case involving substantially similar facts in *Gardner v. Credit Management LP*, 2015 WL 6442246 (S.D.N.Y. Oct. 23, 2015).  In *Gardner*, defendant Credit Management LP ("CMI") sent a "mass-produced debt collection notice" to plaintiff in a glassine window envelope.  A string of alphanumeric characters were visible through the envelope, which included a "nine-digit internal tracking number assigned to [plaintiff's] account." *Id.* at *1.  The district court granted CMI's motion for judgment on the pleadings, noting that "[t]he string of characters certainly does not convey to a casual or interested observer—and certainly not to the 'least sophisticated consumer'—that [plaintiff] is in debt."  *Id.* at *4; *see id.* at *5 ("The internal tracking number at issue . . . does not appear in a format that would signify to anyone outside of CMI that it pertains to a debt.").  The *Gardner* court further observed that "plugging in the tracking number reveals nothing to connect the letter to debt collection"—the number was used only for internal tracking purposes.  *Id.*

Similar to *Gardner*, in *McShann v. Northland Group, Inc.*, 2015 WL 8097650, *1 (W.D. Mo. Dec. 1, 2015), the envelope at issue "had a window through which [p]laintiff's name, address, and [reference] number were visible."  "Defendant claims this number was not a number provided by [p]laintiff, but was instead assigned by [d]efendant and known only internally"—a claim plaintiff did not dispute.  *Id.*  The *McShann* court held that "the account number . . . was benign because the number alone did not reveal the source or purpose of the [l]etter.  Instead, the number appeared without context as a mere collection of random numbers."  *Id.* at *2.

Additionally, in *Gonzalez v. FMS, Inc.*, the Northern District of Illinois rejected an FDCPA challenge based upon the printing of an internal reference number on a debt collection envelope. As the court noted, "an unsophisticated consumer viewing the envelope could not plausibly divine that the letter inside was associated with a delinquent debt."  2015 WL 4100292, *5.  "Plaintiff has

Case No. 15-CV-00188-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1    not alleged, nor is there any basis to infer, that the . . . number embedded in the string of numbers

2    would have meaning to anyone other than Defendant." *Id.* Moreover, "[t]he number is not

3    identified in any way as an account number." *Id.*

4         *Gardner*, *McShann*, and *Gonzalez*—three cases which mirror the facts here—are consistent

5    with prior applications of the benign language exception.  Nonetheless, Plaintiff challenges the

6    above factual evidence and legal authority in two ways.  First, Plaintiff contends that the Court

7    should follow the Third Circuit's holding in *Douglass v. Convergent Outsourcing*, 765 F.3d 299

8    (3d Cir. 2014).  Second, Plaintiff contends that the reference number at issue contains information

9    about her Social Security number.  Both arguments are unavailing.

10        In *Douglass*, plaintiff's delinquent account number was visible through a glassine window

11   envelope.  *Id.* at 300.  This delinquent account number was not a number generated solely for

12   purposes of internal tracking by the letter vendor.  "Also visible through the window was

13   [plaintiff's] name and address, a United States Postal Service bar code, and a quick response

14   ('QR') code, which, when scanned by a device such as a smart phone, revealed the same

15   information as that displayed through the glassine window, as well as a monetary amount

16   corresponding to [plaintiff's] alleged debt." *Id.* at 300–01.  In bringing suit, plaintiff argued that

17   defendant's decision to display her delinquent account number and a QR code that could reveal,

18   among other things, the debt amount violated the FDCPA.  The district court disagreed and

19   concluded that "[t]he presence of the account number, either in the QR code or on the face of the

20   envelope, does not violate § 1692f(8)." *Douglass v. Convergent Outsourcing*, 963 F. Supp. 2d

21   440, 446 (E.D. Pa. 2013).

22        The Third Circuit reversed the district court's decision.  Contrary to the district court, the

23   Third Circuit held that "[t]he account number is a core piece of information pertaining to

24   [defendant's] status as a debtor and [defendant's] debt collection effort.  Disclosed to the public, it

25   could be used to expose [defendant's] financial predicament." 765 F.3d at 303.  Indeed, the

26   delinquent account number and QR code could be used to identify plaintiff as being a debtor and

27

28
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

reveal the amount of plaintiff's debt.  Thus, "the account number is not meaningless—it is a piece of information capable of identifying [plaintiff] as a debtor.  And its disclosure has the potential to cause [the sort of] harm to a consumer that the FDCPA was enacted to address."  *Id.* at 305–06.

*Douglass* is inapplicable here.  In *Douglass*, the delinquent account number and QR code that could reveal plaintiff's name, address, delinquent account number, and debt amount could have been used to identify plaintiff as a debtor.  Here, the envelope did not display Plaintiff's delinquent account number, did not reveal Plaintiff's debt amount, and thus did not identify Plaintiff as a debtor.  Rather, the reference number and bar code here are used by Defendant's letter vendor for internal tracking purposes.[3]

Indeed, in a declaration filed in support of Plaintiff's summary judgment motion, Plaintiff's counsel states that "[w]hen the barcode is scanned, the following information is displayed: ARSL/1/6474509"—which is simply a portion of the reference number at issue.  ECF No. 80-3 ¶ 4.  Again, nowhere in Plaintiff's briefing or in any of Plaintiff's exhibits has Plaintiff stated that either this bar code or the reference number could be used to identify Plaintiff's delinquent account number, debt amount, or status as a debtor.  As such, the issues about which the *Douglass* court was concerned—plaintiff's "status as a debtor" and plaintiff's "financial predicament"—simply do not apply here.  765 F.3d at 303.

As an additional point, a number of courts have disagreed with *Douglass* to the extent that *Douglass* held that a delinquent account number—without an accompanying QR code that could

---

[3] On this particular point, the Court notes that Plaintiff could have, but chose not to, depose Defendant's Rule 30(b)(6) witness.  During the April 7, 2016 case management conference, the Court pointed out that, "in the last [four] joint case management statements filed on September 30th, 2015, filed on December 1st of 2015, filed on February 3rd of 2016, and . . . on March 21st of 2016, Plaintiff[] ha[s] stated that [Plaintiff had not] yet deposed . . . Defendant's 30(b)(6) witness," but that the deposition would be conducted shortly.  ECF No. 74 at 6.  However, a 30(b)(6) deposition was never conducted, and discovery closed on March 31, 2016.  At the case management conference, Plaintiff's counsel stated that he was concerned that conducting a 30(b)(6) deposition would increase his attorney's fees.  *Id.*  Nonetheless, Plaintiff's counsel acknowledged that he was "not saying [that he had] an excuse."  *Id.* at 7; *see also id.* ("I'm just making an observation that we perhaps should have done [depositions] earlier but we . . . were hopeful the case might have settled and if that's just our mistake, that's just our mistake.").

Case No. 15-CV-00188-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

reveal plaintiff's name, address, delinquent account number, and debt amount—could create

FDCPA liability.  This Court need not reach this issue in the instant case, as the reference number

and bar code at issue are for internal tracking purposes only and do not identify Plaintiff's

delinquent account number, debt amount, or status as a debtor.  Nonetheless, as discussed below,

when a delinquent account number is displayed without any additional information identifying an

individual's debt amount or status as a debtor, numerous courts have declined to impose FDCPA

liability.

In *Perez v. Global Credit and Collection, Corp.*, 2015 WL 4557064, *4 (S.D.N.Y. July 27,

2015), for instance, the district court stated that "the Third Circuit's conclusion about the potential

for harm in the account number itself (i.e., without the [identifying] information contained in the

QR code) was simply *ipse dixit*, unsupported by any analysis."  "[T]he fact that [something] is an

account number says nothing about whether the plain white envelope contained a debt collection

communication, as opposed to a renewal notice, a special offer to customers, or any of the other

myriad junk mail communications that arrive in plain white envelopes with glassine windows on a

daily basis in the mailboxes of America."  *Id.*  Thus, "nothing about [the delinquent account]

number [in *Perez*] is misleading" because the delinquent account number is "simply a string of

digits that do[] not indicate that the enclosed communication *relates to a debt*."  *Id.* at *5

(emphasis added); *see also Robinson v. Municipal Services Bureau*, 2015 WL 7568644, *4 n.3

(E.D.N.Y. Nov. 24, 2015) ("I disagree with *Douglass* and agree with *Perez* that it is unsupported

by any analysis as to *how* the printing of random symbols, meaningful only to those at the

organization who issued those symbols and who already know the consumer is in debt, can be

used to expose a consumer's status as a debtor.").

*Brooks v. Niagara Credit Solutions, Inc.*, 2015 WL 6828142 (D. Kan. Nov. 6, 2015), is

similarly illuminating.  In *Brooks*, plaintiff alleged that her delinquent account number was

displayed on a debt collection envelope, and the court concluded that such allegations did not

establish FDCPA liability.  In reaching this determination, the *Brooks* court relied upon the Tenth

Case No. 15-CV-00188-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

Circuit's decision in *Marx v. General Revenue Corp.*, 668 F.3d 1174 (10th Cir. 2011).  "In *Marx*, the [Tenth] Circuit held that an internal account number on a facsimile sent by a debt collector to a debtor's employer to verify wage information did not violate the FDCPA."  2015 WL 6828142, *4 (citing 668 F.3d at 1177).  "As explained by the [Tenth] Circuit, the account number did not convey any information at all—it is a jumble of numbers, designed for internal identification purposes, the functional equivalent of a bar code."  *Id.* (citing 668 F.3d at 1183) (internal quotation marks omitted).  The *Brooks* court thus declined to impose FDCPA liability, and held that "[a]n internal account number, without more, simply cannot suggest to an observer that the envelope contains debt collection correspondence."  *Id.* at *6.

The Western District of Missouri similarly dismissed an FDCPA claim where "[t]he [l]etter's envelope had a window through which [p]laintiff's name, address, and account number were visible."  *Alvarado v. Northland Gp., Inc.*, 2015 WL 7567091, *1 (W.D. Mo. Nov. 19, 2015). As the district court noted, "[w]hile debtor privacy may be a legitimate concern, and a concern addressed in other laws, the purpose of . . . the FDCPA was not to prevent disclosure of internal account numbers, but to prevent identification of the recipient as a debtor."  *Id.* at *2.  In other words, the number at issue in *Alvarado*, as in the instant case, did not identify plaintiff as a debtor.

Finally, in *Schmid v. Transworld Systems, Inc.*, 2015 WL 5181922, *4 (N.D. Ill. Sept. 4, 2015), the district court noted that, "when the general prefatory text is read with the specific ban on using any language or symbol when communicating with a debtor, the Court must conclude that § 1692f(8) does not ban an alphanumeric string that communicates nothing."  *Id.* at *5 (internal quotation marks omitted).  Thus, "[b]ecause an unsophisticated consumer would not perceive a string of otherwise nonsensical letters and numbers on [p]laintiff's envelope as connected to a debt collection, the core concern of privacy as highlighted in the *Douglass* decision does not come into play."  *Id.*[4]

---

[4] It appears that the only court outside the Third Circuit to have found FDCPA liability based upon *Douglass* was the district court in *Adkins v. Financial Recovery Services, Inc.*, 2015 WL 5731842 (N.D. Ill. Sept. 30, 2015).  In *Adkins*, the district court acknowledged that at least three courts

Case No. 15-CV-00188-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    To summarize, unlike in *Douglass*, the debt collection envelope in the instant case does not

2   identify Plaintiff's delinquent account number, debt amount, or status as a debtor.  The reference

3   number and bar code at issue are used by Defendant's letter vendor only for internal tracking.  The

4   reference number and bar code are thus benign language, and imposing FDCPA liability would do

5   nothing to further Congress's purpose of "enact[ing] the FDCPA [in order] to protect consumers

6   from improper conduct and illegitimate collection practices."  *Clark*, 460 F.3d at 1169–70

7   (internal quotation marks omitted).

8    As a final matter, Plaintiff makes much of the fact that the "number displayed on

9   Defendant's envelope contains a portion of [Plaintiff's] [S]ocial [S]ecurity number."  Pls. Opp'n.

10   at 10.  The reference number at issue reads: ARSL/1/647509 694009370925 18361/000012983/45.

11   During Plaintiff's deposition, Defendant asked whether these digits "bear any relationship at all to

12   [Plaintiff's] [S]ocial [S]ecurity number."  ECF No. 79-5 at 15.  Plaintiff answered "[n]o."  *Id.*

13   Immediately after Plaintiff provided this response, the parties agreed to take a short recess.  After

14   the recess, Plaintiff changed her answer, and stated that three consecutive digits within the

15   reference number coincided with three consecutive digits in her Social Security number.  *Id.*

16   Plaintiff confirmed that the rest of the reference number bore no relationship to her Social Security

17   number.

18    Plaintiff's argument lacks merit for several reasons.  First, Plaintiff has presented no

19   evidence to demonstrate that this overlap in three digits was anything more than a mere

20   coincidence.  The reference number at issue is almost fifty characters and digits long.  It is

21   plausible that three digits within such a long reference number could coincide with three digits in

22   any individual's nine digit Social Security number.

23    Second, Plaintiff was at first unable to identify the reference number as bearing any

24

25   within the Northern District of Illinois had already held "that the display of a debtor's account
     number on a collection envelope does not violate § 1692f(8)."  *Id.* at *2.  Moreover, the court
26   acknowledged that numerous cases in other districts have disagreed with *Douglass*.  *Id.*
     Notwithstanding these decisions, the *Adkins* court found *Douglass* more persuasive.  However, the
27   *Adkins* court provided no independent analysis for its decision.

28   Case No. 15-CV-00188-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    relationship to Plaintiff's Social Security number during her deposition.  The FDCPA's purpose is

2    "to protect consumers from improper conduct and illegitimate collection practices."  *Clark*, 460

3    F.3d at 1169–70 (internal quotation marks omitted).  Such concerns are less pronounced when

4    Plaintiff herself can not, without consulting her attorney during a recess in her deposition, even

5    identify the relationship between the reference number at issue and her Social Security number.

6          Third, the fact that three digits in the reference number coincide with three digits in

7    Plaintiff's Social Security number does nothing to reveal Plaintiff's identity.  Social Security

8    numbers are nine digits long.  There are likely thousands (if not hundreds of thousands) of Social

9    Security numbers that include the three digits at issue.  On this point, the Court finds instructive

10   then-U.S. District Judge Jose Cabranes's decision in *Johnson v. NCB Collection Services*, 799 F.

11   Supp. 1298 (D. Conn. 1992).  In that case, the "upper left corner of the [debt collection] envelope"

12   contained "a series of numbers and letters . . . above [plaintiff's] name."  *Id.* at 1301.  The last four

13   digits of this series, 1495, were "meant to convey to [defendant's] staff the amount of [plaintiff's]

14   debt, here $14.95."  *Id.*  Judge Cabranes rejected plaintiff's claim that displaying these four

15   numbers violated the FDCPA.  As Judge Cabranes explained, "it is hardly apparent that any

16   individual unenlightened in [defendant's] encoding process could have deciphered [plaintiff's]

17   debt from the printed series of numbers and letters."  *Id.* at 1305–06.  "The enclosure of a payment

18   envelope bearing [plaintiff's] name and address along with encoded information regarding his debt

19   [does] not violate the FDCPA."  *Id.* at 1306.  Consequently, Judge Cabranes granted summary

20   judgment in favor of defendant.

21         Fourth, neither the original complaint nor the FAC in the instant case mentions that digits

22   in the reference number overlapped with digits in Plaintiff's Social Security number.  Indeed,

23   neither the original complaint nor the FAC even contains the words "Social Security."  It appears

24   that Plaintiff only posited a Social Security number theory *after* Defendant's counsel asked about

25   the issue at Plaintiff's deposition.

26         Fifth, Plaintiff has cited no legal authority supporting her contention that displaying three

27                                                    17

28   Case No. 15-CV-00188-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    digits of an individual's nine digit Social Security number in a string of almost fifty characters and

2    digits would violate the FDCPA.  The Court has found none in its own research.  In light of the

3    other reasons listed above, the Court declines to tread new ground and impose FDCPA liability

4    here.

5           Accordingly, Defendant's motion for summary judgment on the issue of whether

6    displaying the reference number and bar code on Plaintiff's debt collection letter envelope violates

7    the FDCPA and RFDCPA is GRANTED.  Plaintiff's motion for summary judgment on this same

8    issue is DENIED.

9           **2.  Display of "Asset Recovery Solutions, LLC"**

10          Plaintiff also contends that Defendant violated 15 U.S.C. § 1692f(8) because Defendant's

11   business name, Asset Recovery Solutions, LLC, was displayed on Plaintiff's debt collection

12   envelope.  As Plaintiff acknowledges, 15 U.S.C. § 1692f(8) allows a "debt collector [to] use his

13   business name if such name does not indicate that he is in the debt collection business."  15 U.S.C.

14   § 1692f(8).  Plaintiff argues, however, that the name Asset Recovery Solutions, LLC does not fall

15   within this exception.

16          Neither the Ninth Circuit nor any court within the Ninth Circuit has ever imposed FDCPA

17   liability because a debt collector displayed his or her business name on a debt collection envelope.

18   In fact, the only Ninth Circuit court to have addressed this issue was the District of Oregon in

19   *Mathis v. Omnium Worldwide*, 2006 WL 1582301 (D. Or. June 4, 2006).  In *Mathis*, plaintiff

20   received a debt collection letter from defendant Estate Recoveries, Inc.  The "return address on the

21   envelope" of the debt collection letter included the name "Estate Recoveries, Inc.," along with the

22   phrase "Over 15 Years of Service to the Financial Industry."  *Id.* at *6.  Much like the instant case,

23   plaintiff in *Mathis* asserted that this envelope violated the FDCPA.  The district court disagreed: "I

24   do not find that the name 'Estate Recovery, Inc.' suggests a debt collection business so as to

25   violate § 1692f(8)."  *Id.*  Consequently, the district court granted summary judgment to defendant.

26          In reaching this decision, the *Mathis* court relied upon the Eighth Circuit's decision in

27

28   Case No. 15-CV-00188-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1    *Strand*.  As noted, in *Strand*, the Eighth Circuit held that an envelope displaying the debt

2    collector's name (D.C.S., Inc., short for Diversified Collection Service, Inc.) as well as the words

3    "PERSONAL AND CONFIDENTIAL" and "IMMEDIATE REPLY REQUESTED" did not

4    establish liability under 15 U.S.C. § 1692f(8).  380 F.3d at 319.

5            Both *Mathis* and *Strand* are consistent with the majority of courts to have considered

6    whether displaying a debt collector's name on a debt collection envelope would violate the

7    FDCPA.  In *Simmons v. Med-I-Claims*, 2007 WL 486879, *9 (C.D. Ill. Feb. 9, 2007), the district

8    court held that an envelope bearing the name "Med-I-Claims" did not "indicate that [Med-I-

9    Claims Services Inc. was] in the debt collection business.  *See id.* (calling argument "frivolous").

10           Similarly, in *Johnson v. NCB Collection Services*, Judge Cabranes held that the words

11   "Revenue Department" on a debt collection envelope did not violate the FDCPA.  As Judge

12   Cabranes acknowledged, "[t]he words 'Revenue Department' in the return address on an envelope

13   arguably might suggest that some credit-related transaction is involved."  799 F. Supp. at 1305.

14   "A revenue department is an entity with which one would ordinarily correspond solely for the

15   purpose of paying a sum of money."  *Id.*  Still, "it is not at all apparent to the casual observer that

16   the use of 'Revenue Department' in a letter's return address indicates that the correspondence is

17   specifically from a debt collector."  *Id.*  "Nothing in the innocuous designation of 'Revenue

18   Department' distinguishes the letter from other permissible forms of correspondence such as direct

19   billings from creditors for debts not yet past due."  *Id.*  Thus, "[t]he mere use of the departmental

20   designation 'Revenue Department' in the return address of a collection notice is simply not the

21   type of abusive collection practice that the FDCPA was intended to reach."  *Id.*

22           More recently, several courts have begun to construe 15 U.S.C. § 1692f(8) as imposing

23   liability only when a name "clearly reflects" or is "obviously identifiable" as one belonging to a

24   debt collector.  In *Davis v. MRS BPO, LLC*, 2015 WL 4326900 (N.D. Ill. July 15, 2015), for

25   instance, the Northern District of Illinois concluded that "the name and return address of MRS

26   BPO [did] not violate § 1692f(8)" because the FDCPA specifically "allows for items necessary for

28   Case No. 15-CV-00188-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

an envelope to move through the mail, unless the debt collector's name *clearly reflects* the correspondence's purpose." *Id.* at *3 (emphasis added).  Furthermore, in *Johnson v. I.C. System, Inc.*, 2016 WL 304545, *1 (E.D. Mo. Jan. 25, 2016), the district court rejected plaintiff's contention that displaying defendant's name "I.C. System, Inc." in bold letters on an envelope established liability under the FDCPA, even though an online search could reveal I.C. System as one of the nation's largest debt collection companies.  As the district court noted, "Congress enacted the FDCPA . . . to curb the use of abusive, deceptive, and unfair debt collection practices." *Id.* (internal quotation marks omitted).  Imposing liability against I.C. System would not further this purpose, as the FDCPA "specifically allows a return name and address to be placed on the envelope, so long as the sender is not *obviously identifiable* as a debt collector."  *Id.* at *2 (emphasis added).

Plaintiff's briefing acknowledges, but does not distinguish, the foregoing authority.  Instead, to rebut Defendant's arguments, Plaintiff relies entirely upon two out-of-circuit cases: *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980 (N.D. Ill. 1979), and *Keasey v. Judgment Enforcement Law Firm*, 2014 WL 1744268 (W.D. Mich. Apr. 30, 2014).

In *Rutyna*, the district court concluded in a single sentence—without citation or explanation—that displaying the name "COLLECTION ACCOUNTS TERMINAL, INC." violated the FDCPA.  478 F. Supp. at 982 ("Defendant's return address violated [the FDCPA], because its business name does indicate that it is in the debt collection business.").  In *Keasey*, the district court concluded that the name "Judgment Enforcement Law Firm" indicated that defendant was in the debt collection business.  2014 WL 1744268, *4.

No Ninth Circuit court has ever adopted the holding of *Rutyna* or *Keasey*.  Indeed, in the nearly forty years since *Rutyna*'s publication, only one court in the Ninth Circuit has even examined *Rutyna*'s discussion of 15 U.S.C. § 1692f(8): *Masuda*.  As discussed above, the *Masuda* court applied the benign language exception to hold that language such as "PERSONAL & CONFIDENTIAL" and "Forwarding and Address Correction Requested" did not violate 15

20

United States District Court
Northern District of California

1 | U.S.C. § 1692f(8).  In reaching this conclusion, the *Masuda* court specifically distinguished

2 | *Masuda* from *Rutyna*, and suggested that 15 U.S.C. § 1692f(8) should be read narrowly, much like

3 | the district courts in *MRS BPO* and *I.C. System*.  759 F. Supp. at 1466 ("The language about which

4 | Masuda complains does not raise [the FDCPA] concerns" at issue in *Rutyna*).

5 |      With the above decisions in mind, the Court finds that a "reasonable jury could return a

6 | verdict" for either party under the facts here.  *Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1302 (E.D.

7 | Cal. 2009).  On the one hand, the instant case is similar to *Mathis*, where the court determined that

8 | the name "Estate Recoveries, Inc." did not violate the FDCPA, and to *NCB Collection Services*,

9 | where the court determined that the words "Revenue Department" did not violate the FDCPA.

10 | Here, Defendant's name also uses the word "Recovery," and the word "Asset," like "Revenue,"

11 | suggests a possible financial relationship, but not necessarily a debtor-creditor relationship.  On

12 | the other hand, a reasonable jury could also find that, when used together, the words "Asset" and

13 | "Recovery" indicate that Defendant is in the business of debt collection.

14 |      Faced with a similar situation, the district court in *Davis v. Baron's Creditors Service*

15 | *Corp.*, 2001 WL 1491503 (N.D. Ill. Nov. 20, 2001), denied both parties' motions for summary

16 | judgment.  As the *Davis* court explained, "[a]n unsophisticated consumer could view the

17 | designation 'Baron's Creditor's Service Corporation' particularly the words 'creditor's service' as

18 | indicating that defendant is in the debt collection business because debt collection is clearly a

19 | service, probably the main service, provided by entities that service creditors." *Id.* at *5.

20 | "However, the mere fact that a name 'could' indicate the debtor is in the debt collection business

21 | is not [a] sufficient basis to grant summary judgment to [either party].  The statute does not say a

22 | debt collector may not use his business name if such name 'could' indicate he is in the debt

23 | collection business, but rather says a debt collector may use his name if it 'does not indicate that

24 | he is in the debt collection business.'" *Id.*  Accordingly, "because the name [was] not as clear on

25 | its face as that in *Rutyna* in evoking the image of a debt collector," the *Davis* court concluded that

26 | "whether defendant's envelope violates section [15 U.S.C.] § 1692f of the FDCPA is an issue of

United States District Court
Northern District of California

21

1    fact for the jury." *Id.*

2        Although the Ninth Circuit has not specifically addressed whether 15 U.S.C. § 1692f(8)

3    disputes should be submitted to a jury, various district courts in the Ninth Circuit have allowed

4    questions to be presented to a jury in similar circumstances.  *See Moritz v. Daniel N. Gordon,*

5    *P.C.*, 895 F. Supp. 2d 1097, 1105 (W.D. Wash. 2012) (finding that "a reasonable jury could" deide

6    whether a "standard voicemail message" violated the FDCPA); *Voris*, 494 F. Supp. 2d at 1163

7    ("Generally, whether a defendant has violated the FDCPA is a question of fact to be resolved by

8    the jury.").  Moreover, Plaintiff has stated that "if th[e] Court decides to adopt the benign symbol

9    exception, then the Court should conduct a trial to decide the factual question of whether the name

10   'Asset Recovery Solutions, LLC' on an envelope indicates to the least sophisticated consumer that

11   the letter is from an entity engaged in the business of debt collection."  Pls. Reply at 8.

12       Accordingly, Defendant's motion for summary judgment on whether Defendant's name, as

13   displayed on Plaintiff's debt collection letter, violates the FDCPA and RFDCPA is DENIED.

14   Plaintiff's motion for summary judgment on this same issue is also DENIED.

15   **IV.    CONCLUSION**

16       For the foregoing reasons, Defendant's motion for summary judgment is GRANTED as to

17   whether the bar code and reference number violate the FDCPA, and DENIED as to whether

18   Defendant's name, as displayed on Plaintiff's envelope, violates the FDCPA.  Plaintiff's motion

19   for summary judgment is DENIED.

20   **IT IS SO ORDERED.**

21   Dated:  June 7, 2016.

22                                        _Lucy H. Koh_
                                          _____

23                                        LUCY H. KOH
                                          United States District Judge

24

25

26

27
                                          22
28   Case No. 15-CV-00188-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT