Fred W. Schwinn (SBN 225575)
Raeon R. Roulston (SBN 255622)
Matthew C. Salmonsen (SBN 302854)
CONSUMER LAW CENTER, INC.
12 South First Street, Suite 1014
San Jose, California 95113-2418
Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190
Email Address: fred.schwinn@sjconsumerlaw.com

O. Randolph Bragg (Pro Hac Vice)
HORWITZ, HORWITZ & ASSOCIATES, LTD.
25 East Washington Street, Suite 900
Chicago, Illinois 60602-1716
Telephone Number: (312) 372-8822
Facsimile Number: (312) 372-1673
Email Address: rand@horwitzlaw.com

Attorneys for Plaintiff
MEENA ARTHUR DATTA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| MEENA ARTHUR DATTA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSET RECOVERY SOLUTIONS, LLC, an Illinois limited liability company,<br><br>Defendant. | Case No. 5:15-CV-00188-LHK-SVK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: April 27, 2017<br>Hearing Time: 1:30 p.m.<br>Hearing Judge: Lucy H. Koh<br>Hearing Courtroom: 8, 4th Floor<br>Hearing Location: 280 South First Street<br>San Jose, California |

COMES NOW Plaintiff and Class Representative, MEENA ARTHUR DATTA ("Plaintiff"), by

and through counsel, and pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, hereby moves

the Court for 1) final approval of the parties' settlement agreement as fair, reasonable and adequate; 2)

an order implementing the terms of the settlement; 3) finding the notice as given to the class members

satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure; and 4)

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 5:15-CV-00188-LHK-SVK

1  retaining jurisdiction to enforce the provisions of the Agreement. The settlement terms are set forth in

2  the Amended Settlement Agreement filed herein as Docket No. 128.2.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I. INTRODUCTION AND OVERVIEW OF THE SETTLEMENT.................................................1

II. STATEMENT OF FACTS AND PROCEEDINGS TO DATE..............................................1

III. THE PROPOSED SETTLEMENT...........................................................................................3

    A. The Class.......................................................................................................................2

    B. Injunctive Relief............................................................................................................3

    C. Monetary Relief.............................................................................................................4

    D. Class Release.................................................................................................................4

IV. ARGUMENT..........................................................................................................................3

    A. The Standards for Judicial Approval of Class Action Settlements...............................4

    B. The Settlement Meets the Ninth Circuit Standard for Approval...................................6

        1. The Parties Could Identify the Strengths and Weaknesses of Their Case....................6

        2. The Settlement Appropriately Balances the Risks of Litigation
        and the Benefit of a Certain Recovery..........................................................................7

            a. Injunctive Relief........................................................................................................8

            b. *Cy Pres* v. Distribution............................................................................................8

        3. Balancing the Certainty of an Immediate Recovery Against the
        Expense and Likely Duration of Trial Favors Settlement.............................................11

        4. The Recommendations of Experienced Counsel Weigh Heavily
        in Favor of Approval of the Settlement........................................................................12

        5. The Reaction of the Class Supports Approval of the Settlement.................................13

V. CONCLUSION........................................................................................................................13

**CASES**

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)...............................................................5

*Catala v. Resurgent Capital Servs. L.P.*,
2010 U.S. Dist. LEXIS 63501 (S.D. Cal. June 22, 2010)................................................................9

*Cummings v. Connell*, 402 F.3d 936 (9th Cir. 2005)...................................................................10

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)...............................................................13

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980).........................................6, 12

*Ellis v. Naval Air Rework Facility*, 661 F.2d 939 (9th Cir. 1981)................................................6

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)..............................................................................11

*Gonzales v. Arrow Financial Services*, 660 F.3d 1055 (9th Cir. 2011).........................................8

*In re MetLife Demutualization Litigation*, 689 F. Supp. 2d 297 (E.D. N.Y. 2010).......................8

*In re Netflix Privacy Litig.*, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013)................9

*In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)..............................................13

*In re Tableware Antitrust Litig.*,
2007 U.S. Dist. LEXIS 89998 (N.D. Cal. Nov. 28, 2007)............................................................10

*In re Warner Communications Sec. Litigation*,
618 F. Supp. 735 (S.D.N.Y. 1985).............................................................................................7, 12

*In re Warner Communications Sec. Litigation*, 798 F.2d 35 (2d Cir. 1986)..................................6

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)...................................................................9

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998).................................................7

*Lombardi v. Columbia Recovery Group, LLC*,
2013 U.S. Dist. LEXIS 146375 (W.D. Wash. Oct. 9, 2013)...........................................................8

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987)..........5

*Malta v. Fed. Home Loan Mortg. Corp.*,
2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 4, 2013)................................................................7

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 5:15-CV-00188-LHK-SVK

*Mathis v. Omnium Worldwide*, 2006 U.S. Dist. LEXIS 36963 (D. Or. June 4, 2006)................................6

*Milstein v. Huck*, 600 F. Supp. 254 (E.D.N.Y. 1984)................................................................11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)................................. 4, 5, 7, 12

*Schwarm v. Craighead*, 814 F. Supp. 2d 1025 (E.D. Cal. 2011)........................................9, 10, 11

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993)................................................5

*Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437 (9th Cir. 1989)...................................4

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)......................................................4

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982)..............................................................13

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971)....................................................................12

**STATUTES**

15 U.S.C. § 1692k(a)(2)....................................................................................8

15 U.S.C. § 1692k(b).......................................................................................8

**RULES**

Fed. R. Civ. P. 23(e).....................................................................................4, 5

- iii -

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 5:15-CV-00188-LHK-SVK

# I.  INTRODUCTION AND OVERVIEW OF THE SETTLEMENT

The proposed settlement resulted from negotiations between the parties after the Court's ruling on summary judgment failed to dispose of the entire case.  The proposed settlement provides that Defendant will: 1) be enjoined from using the name "Asset Recovery Solutions, LLC" appearing through the glassine window in its collection letters, and from placing the letter vendor's internal tracking codes that appeared above the consumers name in the glassine window in its collection letters; 2) make a *cy pres* payment of $5,000.00 to the Pro Bono Project of Silicon Valley for use in consumer education, in the name of the Class; 3) pay $1,000.00 to Plaintiff for her individual claims; 4) pay additional amounts for the costs of notice to the Class and administration; and 5) pay any attorney's fees, costs or expenses that the Court may award to Class Counsel, capped at $17,000.00.  In exchange, Plaintiff, on behalf of the Class, will dismiss the litigation, and the Class will release and discharge Defendant from all claims relating to the litigation.  Defendant has already permanently ceased the use of the envelope which was the subject of the Complaint.

The posture of the case prior to settlement was that the Court was set to conduct a trial to decide the single factual question of whether the name 'Asset Recovery Solutions, LLC' on an envelope indicates to the least sophisticated consumer that the letter is from an entity engaged in the business of debt collection.  While Plaintiff is hopeful of a favorable determination on the merits, Plaintiff also recognizes that Defendant is equally confident of prevailing.  Realistically, the prospect of Plaintiff prevailing at Trial on this single narrow issue could be seen as no better than a "50-50" proposition. Considering the uncertainty of law, risk of loss, and difficulties of proof unique to this action, Plaintiff and Class Counsel believe that the proposed settlement is in the best interests of the Class.

# II.  STATEMENT OF FACTS AND PROCEEDINGS TO DATE

Plaintiff incurred a financial obligation, namely a consumer credit account issued by HSBC

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 5:15-CV-00188-LHK-SVK

Bank Nevada, N.A., which was later sold, assigned, or otherwise transferred to Defendant for collection. Defendant sent Plaintiff a letter, in the form of Exhibit "1" attached to the First Amended Complaint,[1] in an attempt to collect the debt. The collection letter (Exhibit "1") was sent in a glassine envelope in the form of Exhibit "2" attached to the First Amended Complaint.[2] The envelope contains the following return address: "Asset Recovery Solutions, LLC, 2200 E. Devon Ave Ste 200, Des Plaines, IL 60018-4501." Through the glassine window of the envelope, DATTA's name, address, account number (ARSL/1/6474509), and a barcode were visible.

On January 13, 2015, DATTA filed her Class Action Complaint, alleging that Defendant and Oliphant Financial, LLC, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). Cal. Civ. Code §1788. Thereafter, on March 4, 2015, DATTA filed her First Amended Class Action Complaint, dismissing Oliphant Financial, LLC, as a Defendant.

The parties engaged in written discovery on both class and merits issues. During this time, Defendant identified the 11,384 potential class members and produced documents relating to Defendant's net worth. Thereafter, on October 15, 2015, DATTA filed her Motion for Class Certification. After a full briefing, on March 18, 2016, the Court entered its Order Granting Motion for Class Certification.[3] The Class is defined as follows:

> (i) all persons with addresses in California, (ii) to whom Defendant sent, or caused to be sent, a collection letter in the form of Exhibit "1" in an envelope in the form of Exhibit "2," (iii) in an attempt to collect an alleged debt originally owed to HSBC Bank Nevada, N.A., (iv) which was incurred primarily for personal, family, or household purposes, (v) which were not returned as undeliverable by the U.S. Post Office, (vi) during the period one year prior to the date of filing this action through the date of class certification.[4]

Thereafter, on April 28, 2016, the parties each moved for summary judgment. On June 7, 2016,

---

[1] See Doc. 21-1.
[2] See Doc. 21-2.
[3] Doc. 66.
[4] Id.

the Court entered an Order granting Defendant's motion in part, and denying DATTA's motion.[5]   On June 30, 2016, the parties reached an agreement in principle to settle the case on a class basis.  On July 13, 2016, the parties entered into a signed Settlement Agreement.[6]   The parties later amended the agreement to integrate suggestions made by the Court at the September 22, 2016, preliminary approval hearing.[7]   On January 13, 2017, the Court entered an Order preliminarily approving the settlement.[8]

### III.  THE PROPOSED SETTLEMENT

The following summarizes the Agreement's terms:

**A.  The Class**

The Court has certified a Class in this litigation, defined as:

> (i) all persons with addresses in California, (ii) to whom Defendant sent, or caused to be sent, a collection letter in the form of Exhibit "1" in an envelope in the form of Exhibit "2," (iii) in an attempt to collect an alleged debt originally owed to HSBC Bank Nevada, N.A., (iv) which was incurred primarily for personal, family, or household purposes, (v) which were not returned as undeliverable by the U.S. Post Office, (vi) during the period one year prior to the date of filing this action through the date of class certification.[9]

After the mailing of a notice of class certification, 11,350 persons remained in the Class.[10]   The deadline to opt out of the proposed settlement is March 28, 2017.[11]

**B.  Injunctive Relief**

To remedy the actions complained of by Plaintiff, Defendant (1) will be enjoined from using the name "Asset Recovery Solutions, LLC" appearing through the glassine window in its collection letters; and (2) will be enjoined from placing the letter vendor's internal tracking codes that appeared above the consumers name in the glassine window in its collection letters.

---

[5]  Doc. 98.
[6]  Doc. 110-1.
[7]  *See* Doc. 128-2.  All references to the "Settlement Agreement" refer to this document.
[8]  Doc. 133.
[9]  Doc. 66.
[10]  *See* Final Report, Doc. 129.
[11]  *See* Order Granting Renewed Joint Motion for Preliminary Approval, Doc. 133 at ECF page 4 of 4.

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 5:15-CV-00188-LHK-SVK

**C. Monetary Relief**

Defendant will make a *cy pres* payment of $5,000.00 to Pro Bono Project of Silicon Valley for use in consumer education,[12] in the name of the Class, and pay $1,000.00 to Plaintiff for her individual claims. Defendant further agrees to pay additional amounts for the costs of notice to the Class and administration, and to pay attorney's fees, costs or expenses to Class Counsel, capped at $17,000.[13]

**D. Class Release**

In exchange for the benefits allowed under the settlement, class members who do not exclude themselves from the settlement will provide a release of any and all claims, known or unknown, arising from the same factual predicate as the claims asserted in this lawsuit.[14]

## IV. ARGUMENT

**A. The Standards for Judicial Approval of Class Action Settlements**

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."[15] Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation. "There is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."[16]

In approving a proposed settlement of a class action under Federal Rule of Civil Procedure 23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable." The Ninth Circuit has provided a list of factors which may be considered in evaluating the fairness of a class action settlement:

---

[12] *See*, Declaration of Sandra Madrigal, Doc. 128-8.
[13] The $17,000 sum is meant to refund Plaintiff's costs incurred for notice of certification to the Class. Class Counsel will effectively recover no attorney fees or other costs if this settlement is approved.
[14] *See*, Settlement Agreement at ¶ 2.4.
[15] *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).
[16] *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 5:15-CV-00188-LHK-SVK

Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.[17]

The district court must exercise "sound discretion" in approving a settlement.[18] However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair."[19] Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable, and adequate to all concerned."[20] The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.[21]

Moreover, the recommendations of counsel should be given a presumption of reasonableness.[22] The presumption of reasonableness in this action is fully warranted because the settlement is the product of

---

[17] *Officers for Justice*, 688 F.2d at 625 (citations omitted).
[18] *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).
[19] *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987).
[20] *Officers for Justice*, 688 F.2d at 625.
[21] *Officers for Justice*, 688 F.2d at 625.
[22] *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 5:15-CV-00188-LHK-SVK

arms-length negotiations conducted by capable, experienced counsel.[23]  It is the considered judgment of experienced counsel that this settlement is a fair, reasonable and adequate settlement of the litigation.

**B.  The Settlement Meets the Ninth Circuit Standard for Approval.**

**1.  The Parties Could Identify the Strengths and Weaknesses of Their Case.**

"[T]he stage of the proceedings and the amount of discovery completed" is one of the factors which courts consider in determining the fairness, reasonableness and adequacy of a settlement.[24] Discovery is complete, and summary judgment has but left a single binary question to be determined at Trial.  The maximum recovery for this violation would be statutory damages of no more than 2% of net worth to the Class under both the federal and state statutory scheme and no more than $2,000 in statutory damages to the Class Representative.

While Plaintiff believes there is a good chance she could prevail on the remaining claim in the case, she also understands that there are uncertainties associated with complex class action litigation and that no one can definitively predict the outcome of any case.  Defendant vigorously contests the merits of Plaintiff's statutory claim.  For instance, Defendant has produced authority that courts (albeit outside this Circuit) have held that using "recovery" in a business name on an envelope did not indicate the business was a debt collector.[25]  Simply put, Plaintiff believes a jury trial on the single factual question of whether the name 'Asset Recovery Solutions, LLC' on an envelope indicates to the least sophisticated consumer that the letter is from an entity engaged in the business of debt collection should be seen as no better than a "50-50" proposition.

Plaintiff disagrees with Defendant's analysis, but understands the risks involved with putting a

---

[23]  *See*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."), *aff'd*, 661 F.2d 939 (9th Cir. 1981).
[24]  *In re Warner Communications Sec. Litigation*, 798 F.2d 35, 37 (2d Cir. 1986).
[25]  *See, Mathis v. Omnium Worldwide*, 2006 U.S. Dist. LEXIS 36963, 18-19 (D. Or. June 4, 2006) (holding that the name, "Estate Recovery, Inc.," along with the phrase "Over 15 Years of Service to the Financial Industry" did not violate section f(8)).

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 5:15-CV-00188-LHK-SVK

single, binary choice question to a jury. These factors thus weigh in favor of approval of the settlement.

Simply put, the litigation had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases."[26] In this case, Plaintiff's counsel had sufficient evidence to permit them to consider the strength and weaknesses of the case, and agreed that the settlement was the appropriate balance of the risks of continued litigation versus the benefits of certain recovery.

**2. The Settlement Appropriately Balances the Risks of Litigation and the Benefit of a Certain Recovery.**

"A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial, nor must the settlement provide 100% of the damages sought to be fair and reasonable."[27] "There is a range of reasonableness in determining whether to approve settlement which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."[28] "The adequacy of the amount recovered must be judged as a yielding of absolutes . . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."[29] "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."[30]

Plaintiff alleged violations of the FDCPA and violations of the RFDCPA. The FDCPA and the RFDCPA both provide for the recovery of statutory damages by successful plaintiffs in an amount to be determined by the Court. These statutory damages may not exceed $1,000 in an individual action, and

[26] *In re Warner Communications Sec. Litigation*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) ("*Warner I*"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).
[27] *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731, at *17 (S.D. Cal. Feb. 4, 2013), *citing, Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).
[28] *Id*. (citations omitted).
[29] *Id.*, *citing, Officers for Justice*, 688 F.2d at 624.
[30] *Id.*

- 7 -

may not exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector in a class action.[31]  Courts have discretion to determine the appropriate amount of statutory damages based on a number of factors (15 USC § 1692k(b)).  Thus, courts may award far less than the maximum allowed by the statute.[32]

The Settlement Agreement in this case provides injunctive relief, and that Defendant will make a *cy pres* payment of $5,000.00 to the Pro Bono Project of Silicon Valley for use in consumer education, in the name of the Class, and pay $1,000.00 to Plaintiff for her individual claims.  Defendant further agrees to pay additional amounts for the costs of notice to the Class and administration, and to pay attorney's fees, costs or expenses to Class Counsel, capped at $17,000.00.

### a. Injunctive Relief

The best reason for the Court to approve the parties' settlement is that Plaintiff has achieved the ultimate goal of the lawsuit – stopping the behavior which led to the lawsuit.  At the Court's suggestion, the parties amended their initial settlement agreement to explicitly provide for injunctive relief in the settlement agreement.  Moreover, Defendant has already permanently ceased the use of the envelope which was the subject of the Complaint.[33]

### b. *Cy Pres* vs. Distribution

"[A] cy pres payment, as an adjunct to a payment by other means to some members of the class, is warranted where the amount to be distributed to the remaining class members is small relative to the administrative costs of a direct distribution."[34]  Courts within this Circuit and this District routinely approve *cy pres* distribution where distribution to the class members would be infeasible.  In *Catala v.*

---

[31]  15 USC § 1692k(a)(2).  The 9th Circuit has not decided whether damages awarded cumulatively under the FDCPA and the RFDPCA in a single action may exceed the FDCPA's $500,000 limitation on statutory damages. *See, Gonzales v. Arrow Financial Services*, 660 F.3d 1055, 1068 (9th Cir. 2011).
[32]  *Lombardi v. Columbia Recovery Group, LLC*, 2013 U.S. Dist. LEXIS 146375 (W.D. Wash. Oct. 9, 2013) (awarding only $1.00 in statutory damages).
[33]  *See,* Declaration of Justin M. Penn, Doc. 128-7, *and exhibits attached thereto.*
[34]  *In re MetLife Demutualization Litigation*, 689 F. Supp. 2d 297, 343 (E.D. N.Y. 2010).

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 5:15-CV-00188-LHK-SVK

*Resurgent Capital Servs. L.P.*, the Court approved a $35,000 *cy pres* distribution in a FDCPA action where the *de minimis* recovery of approximately thirteen cents per class member would make distribution to class members impracticable.[35] The *Catala* Court also approved a $2,500 incentive payment to the named Plaintiff, despite there being no distribution to the class. Though not an FDCPA case, in *Lane v. Facebook, Inc.*, the Ninth Circuit Court of Appeals approved a $9.5 million contribution to a settlement fund which, after attorneys' fees and costs deductions, would be used by defendant to establish charity organization because "it would be burdensome and inefficient to pay the $6.5 million in cy pres funds that remain after costs directly to the class because each class member's recovery under a direct distribution would be de minimis."[36] In *In re Netflix Privacy Litig.*, this Court approved *cy pres* distributions because of "the sheer size of the Class (over 62 million Netflix members) each Class member would receive a de minimis payment in the event of a direct class cash payout. This amount would likely prove to be nullified by distribution costs."[37]

After 33 exclusions, the Class herein consists of 11,350 persons.[38] This would result in a distribution of $0.44 per person – less than the $0.47 cost of a first-class postage stamp – if the proposed $5,000 *cy pres* were simply to be distributed to the Class instead. The cost of mailing notice of class certification to the original 11,383 person Class was approximately $17,000. Mailing notice of preliminary approval cost just as much. Factoring in the cost of generating 11,350 checks, a distribution may be even more expensive than that figure.

Class Counsel was previously involved in the case of *Schwarm v. Craighead*,[39] where the Eastern District analyzed a similar distribution plan which proposed no disbursement to class members other than the named plaintiffs. Although in *Schwarm*, the litigation costs and attorney fees and

[35] 2010 U.S. Dist. LEXIS 63501 (S.D. Cal. June 22, 2010).
[36] 696 F.3d 811, 824-25 (9th Cir. 2012).
[37] 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) (Davila, J.).
[38] *See* Final Report, Doc. 129.
[39] 814 F. Supp. 2d 1025, 1031 (E.D. Cal. 2011).

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 5:15-CV-00188-LHK-SVK

incentive fees were to be paid from the common fund, with any remainder to be paid to a *cy pres* recipient, the court's analysis is instructive here. The court first distinguished *Cummings v. Connell*,[40] wherein the Ninth Circuit overturned this Court's decision to award nominal damages only to the named plaintiff, and required that each class member receive damages in the amount of $1.00. Unlike *Cummings*, *Schwarm* did not "involve nominal damages designed to 'vindicate rights, the infringement of which has not caused actual, provable injury'. . ."[41] Thus, the court reasoned, it was "not as symbolically important that each class member be paid a 'token' dollar in damages."[42] Unlike *Cummings*, and like the case at bar, the limited fund in *Schwarm* was not sufficient to pay each member of the class his or her full damages.

The *Schwarm* court also discussed *In re Tableware Antitrust Litig.*,[43] another Northern District case where all of a class action common fund was awarded to the class attorneys, leaving nothing for distribution to class members. There, the Court engaged in a two step analysis: first, it asked whether the litigation costs sought were reasonable and, second, whether a fully informed class representative engaged in negotiations with class counsel would have agreed at the outset of litigation to reimburse litigation costs up to the full amount of the settlement. The Court answered both questions then in the affirmative. Court should do so here. Although the attorney fees in this case are not being paid as part of a common fund recovery, the underlying principle is the same. The $17,000 in attorney fees Defendant has agreed to pay represents a refund of costs incurred by Class Counsel to send notice of class certification. Class Counsel here litigated reasonably, did not lose outright on summary judgment, but will still essentially collect no attorney fees or other costs. Though two of the class members in *Schwarm* objected, the Court held that:

---

[40] 402 F.3d 936, 942 (9th Cir. 2005).
[41] *Schwarm*, 814 F. Supp. 2d at 1032.
[42] *Id.*
[43] 2007 U.S. Dist. LEXIS 89998 (N.D. Cal. Nov. 28, 2007).

MEMORANDUM OF POINTS AND AUTHORITIES              Case No. 5:15-CV-00188-LHK-SVK

Plaintiffs' attorneys conducted the litigation responsibly and, even after receiving the bulk of the common fund, will still be suffering a financial loss. . . In such a situation, the court is satisfied that the proposed plan of distribution represents "what it believes would have been obtained in a negotiation between a fully informed and interested class representative and class counsel."[44]

The Court can also conclude that the settlement is fair and reasonable by asking what is the best result for the Class in the absence of a settlement. As set forth above, the parties were set to head to jury trial on the single factual question of whether the name 'Asset Recovery Solutions, LLC' on an envelope indicates to the least sophisticated consumer that the letter is from an entity engaged in the business of debt collection. Even if Plaintiff had prevailed on the issue at trial, Plaintiff and the Class would be limited to a *maximum* recovery of 1% of Defendant's net worth, or just under $16,000. Even in the event of a complete win for Plaintiff, a distribution of $16,000 would have the same logistical challenges set forth above. The only real benefit to proceeding to Trial would be the chance for Class Counsel to obtain an award of their full attorney fees and costs – if, and only if, Plaintiff were to prevail. However, a win for Plaintiff was far from certain.

This award is thus fair, appropriate, and reasonable, especially in light of the anticipated, risk, expense, and uncertainty of continued litigation as discussed above. Thus, a balance of these factors in this case supports approval of the settlement.

### 3. Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Trial Favors Settlement.

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether the proposed settlement is fair, adequate and reasonable.[45] Courts consistently have held that "[t]he expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a] settlement."[46] Therefore, the present settlement must also be balanced against

---

[44] *Schwarm*, 814 F. Supp. 2d at 1033, *citing, Tableware*, 2007 U.S. Dist. LEXIS 89998, at *23.
[45] *See, e.g.*, *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).
[46] *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984).

- 11 -

the expense of only potentially achieving a more favorable result at trial.[47]  Approval of the settlement

will mean a prompt resolution of this case for all parties.  If the case did not settle, the parties would

have a trial, the outcome of which as to the quantity of statutory damages would be at issue.  The

incursion of additional attorney's fees and costs of trial would severely waste resources and result in

questionable gain to the Class.  A judgment favorable to Plaintiff could be the subject of post-trial

motions and appeals, which could prolong the case.[48]  Therefore, litigation, not just at the trial stage, but

through post-trial motions and the appellate process as well, could delay a final resolution for the Class.

Settlement of this litigation before significant additional resources have been expended will

benefit everyone.  As the Ninth Circuit has made clear, the very essence of a settlement agreement is

compromise, "a yielding of absolutes and an abandoning of highest hopes."[49]  "Naturally, the agreement

reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk,

the parties each give up something they might have won had they proceeded with litigation . . ."[50]

Accordingly, even if the Class could have received some *de minimis* monetary compensation after trial

(given the damages limit discussed above), such a recovery would be trivial if the Class Members had

to wait years.  This does not preclude the Court from finding that the settlement is within a "range of

reasonableness" that is appropriate for approval.

**4.  The Recommendations of Experienced Counsel Weigh Heavily in Favor of Approval of the Settlement.**

Experienced counsel, negotiating at arm's length, have weighed these factors and endorse the

settlement.  As courts have stated, the view of the attorneys actively conducting the litigation, while not

conclusive, "is entitled to considerable weight."[51]  In approving a settlement, courts often focus on the

[47]  *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).
[48]  *See, e.g.*, *Warner I*, 618 F. Supp. at 745 (delay from appeals is a factor to be considered).
[49]  *Officers for Justice*, 688 F.2d at 624.
[50]  *Id*; *Ellis*, 87 F.R.D. at 19 (as a quid pro quo for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands).
[51]  *Ellis*, 87 F.R.D. at 18.

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 5:15-CV-00188-LHK-SVK

"negotiating process by which the settlement was reached."[52] This action has been litigated by experienced and competent counsel on both sides of the case. The law firms representing Plaintiff and the Class are experienced in class action and FDCPA litigation.[53] That such qualified and well-informed counsel, operating at an arm's length, endorse the settlement as being fair, reasonable and adequate to the Class, heavily favors this Court's approval of the settlement.

### 5. The Reaction of the Class Supports Approval of the Settlement

Notices of the proposed settlement were sent to 11,350 Class Members on February 9, 2017, per the Court's preliminary approval Order. The deadlines to object and opt out are both on March 28, 2017. However, as of March 9, 2017, there have been no objections to the settlement, or opt-outs.[54] The absence of any meaningful objection by class members thus far is an important factor in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement.[55] In fact, the lack of objections may well evidence the fairness of the settlement.[56]

### V. CONCLUSION

This settlement is a good result, given the presence of skilled counsel for all parties, the fact that the Class obtained both injunctive relief and a donation in support of consumer education, the expense if this litigation were to continue to trial, the significant present benefit of the settlement to finally resolve this matter in comparison with the risks involved if the matter proceeded to judgment.

Moreover, the judicial system and the public benefit from the prompt resolution of potentially complex litigation. Therefore, Plaintiff respectfully request that this Court approve the settlement of this litigation as fair, reasonable and adequate.

---

[52] *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).
[53] *See*, Docs. 128-6, 43-3, 43-6, and 43-7.
[54] Declaration of Raeon R. Roulston filed herewith at ¶ 4, and Exhibit "A."
[55] *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).
[56] *In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 5:15-CV-00188-LHK-SVK

CONSUMER LAW CENTER, INC.

Dated: March 11, 2017                    By: /s/ Raeon R. Roulston
                                              Fred W. Schwinn (SBN 225575)
                                              Raeon R. Roulston (SBN 255622)
                                              Attorneys for Plaintiff
                                              MEENA ARTHUR DATTA

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 5:15-CV-00188-LHK-SVK